ORLANDO TOMPKINS & others *vs.* ISAAC C. WYMAN.

Essex.    Nov. 5, 1874. — Jan. 9, 1875.    AMES & DEVENS, JJ., absent.

A petition under the Gen. Sts. c. 134, § 49, will not lie to compel a person to bring an action to try his alleged title, unless the petitioner has an exclusive and adverse possession which works a disseisin of the respondent.

Land held in common was divided among the proprietors and held by them in severalty, but improved as a common pasture in proportion to the land owned by each. The greater part of the proprietors conveyed their lands to A., who gave a deed of the entire estate to B., the deed containing covenants of warranty except as against C., who had the title of the other proprietors. B. entered upon the entire tract of land. *Held*, that B. had not an adverse possession against C., and could not by petition, under the Gen. Sts. c. 134, § 49, compel him to bring an action to try his title.

PETITION under the Gen. Sts. c. 134, §§ 49, 50, to compel the respondent to bring an action to try his alleged title to a certain

parcel of land upon the Great Neck in Marblehead. The respondent claimed to own a portion of the said land, and disclaimed all title to the residue.

At the hearing in this court, before *Colt,* J., the petitioners put in evidence a deed of quitclaim from George F. Odiorne to them of the premises described in their petition, dated February 12, 1872, with testimony which, in the judgment of the presiding judge, proved that the petitioners entered upon the premises under the deed and " expended large sums of money in surveying and lotting up the premises and building roads through the same in various directions, and in this manner were in possession of the same from 1872 up to the time of the filing of the petition."

The respondent then introduced evidence tending to show that Marblehead Neck was originally owned by commoners, so called ; that in October, 1638, grants of small portions of the Neck were made to various persons, and that in January, 1722–3, the bounds of the lots so granted were established, and the remainder of the Neck divided among the commoners by metes and bounds, and was all thereafter held in severalty by the proprietors, but improved in common as a common pasture by them, they acting as a *quasi* corporation, electing officers and having a hayward who had charge of the pasture generally, and of the turning of the cattle there pastured on and off the Neck ; that all the cattle were turned on and off through a gateway at the southwest end of the Neck, the cattle having the whole run of the Neck excepting the land which was then fenced off and cultivated on the northwestern side of the Neck.

It appeared also that the proprietors were entitled to pasture in proportion to the land owned by them, and that the premises were so improved up to 1845, at which time the proprietors ceased to hold meetings, most of them having sold their land to Ephraim Brown, through whom the petitioners claim. That, from 1820 to 1845, those under whom the respondent claimed were of the said proprietors, and so improved the land claimed by the respondent ; that subsequently to 1845 and up to 1872 the respondent and those under whom he holds improved the land in the same manner as before, to wit, by pasturing cattle thereon. The respondent also introduced evidence tending to show record

title in himself. to the lands claimed in his answer, all the proofs of title being of earlier date than February 12, 1872.

It also appeared in evidence that on February 12, 1872, a deed of the entire premises described in the petition was made by William Fabens and others, trustees under the will of Ephraim Brown, to George F. Odiorne, and a mortgage given back to them by Odiorne to secure a part of the purchase money, in which it was provided, among other things, that in the event of the respondent establishing his title to a part of the granted premises, a proportionate part of the. money secured by the mortgage should be deemed to have been paid ; also that a warranty deed of the same date was made by the *cestuis que trust* under the said will to Odiorne, in which they granted all the premises described in the petition, and among other things, covenanted to warrant the same against the lawful claims and demands of all persons except the respondent, and those claiming by, through or under him.

The respondent asked the judge to rule that he should not be ordered to bring an action as prayed for by the petitioners. But the judge declined so to rule ; and found as a fact that the petitioners were actually in such possession of the premises described in the petition, at the date of their petition, as would entitle them to maintain their petition, and had been in such possession since February 12, 1872, claiming an estate in fee ; and that the respondent claimed to be the owner of a part of the said premises, to wit, that part described in his answer, which claim was of an estate adverse to the estate of the petitioners ; and, without passing upon the validity of the respondent's title, entered the following order :

" Ordered, that the respondent be required to bring a proper action to try his title to the premises described in this petition within six months from the last day of this term of the court, and that this petition stand continued." To this ruling and order the respondent alleged exceptions.

*E. R. Hoar & C. P. Thompson*, for the respondent.

*S. B. Ives, Jr.*, for the petitioners.

MORTON, J. The tract of land which this suit concerns was originally owned by commoners. In 1723 it was divided among the proprietors by metes and bounds, and was thereafter held

by them in severalty, but was used and improved by them in common as a pasture, they acting as a *quasi* corporation. The proprietors thus improved the lands up to 1845, when they ceased to hold meetings, the most of them having sold their interests to Ephraim Brown, through whom the petitioners claim. The respondent proved that he owned the lands described in his answer, and that up to 1872 he, and those under whom he claimed, improved the lands as before by pasturing cattle thereon. In February, 1872, one Odiorne, who then held the title of said Brown, made a quitclaim deed to the petitioners, covering the whole tract and including the land of the respondent. Under this deed the petitioners entered upon the premises, and, as stated in the bill of exceptions, " expended large sums of money in surveying and lotting up the premises and building roads through the same in various directions, and in this manner were in possession of the same from 1872 up to the time of the filing of the petition."

The petitioners took by their deed, and can claim title to, only those parts of the larger tract which were held in severalty by Ephraim Brown. Their only possession, as stated above, is not inconsistent with, or exclusive of, the possession and use of the premises by the respondent, for the purpose of pasturing cattle. There is now, as there has been for more than a hundred years, a mixed possession of persons owning in severalty but occupying in common. The statute provides that " any person in possession of real property claiming an estate of freehold " may bring his petition, if the respondent makes a claim adverse to the estate of the petitioner. Gen. Sts. *c.* 134, § 49. We think this contemplates an exclusive and adverse possession which works a disseisin of the respondent. *Munroe* v. *Ward*, 4 Allen, 150. The petitioners do not show any ouster of the respondent. There was no fencing or other occupation which would exclude him.

The real difficulty in this case is the difficulty of ascertaining the boundaries of the lots of the parties. Neither party claims any land included in the deeds of the other. Neither party has seen fit to assert any exclusive possession of the land claimed by him. There is no reason why the respondent rather than the petitioners should be compelled to bring a suit, and thus assume the burden of being able to fix definitely the disputed boundaries.

We are of opinion therefore that upon the facts shown at the trial the petition should have been dismissed. ·

*Exceptions sustained.*