FIRST BAPTIST CHURCH OF SHARON *vs.* HATTIE M. HARPER.

Norfolk.    December 6, 1905. — March 6, 1906.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Religious Society. Adverse Possession. Evidence. Equity Jurisdiction,* To remove cloud from title. *Equity Pleading and Practice,* Amendment, Decree.

By St. 1811, c. 6, § 3, many times re-enacted and still in force in R. L. c. 37, § 12, an unincorporated religious society can acquire, use and enjoy property in the same manner as if incorporated, and therefore by a continuous adverse possession of twenty years can acquire a title to real estate by limitation.

For the purpose of showing that under the successive statutes re-enacting St. 1811, c. 6, § 3, now R. L. c. 37, § 12, an unincorporated religious society had acquired by a continuous adverse possession of twenty years a title to certain land by limitation, entries from the record book of the society are admissible to show its original organization and a vote to purchase the land in question and to erect a house of worship thereon, and if the entries in the record book are certified to by a deacon of the church as clerk of the meetings, to whom in his own name a deed of the land in question was made immediately after the vote of the society to purchase it, the record is relevant to establish the fact that in taking the deed of the land in his own name he was acting in behalf of the society and was not purchasing it for himself.

If an unincorporated religious society votes to purchase certain land and to erect a house of worship thereon, and a conveyance of the land is made to one who is a member and communicant of the society, and thereafter the society builds a meeting house on the land and occupies it continuously under a claim of right, the fact that the grantee of the land is a regular attendant upon divine worship

at the meeting house does not show a use of the property by him in common with the society so that it can be said that there is a mixed possession, for his attendance is as a member and communicant of the society and not as an owner of the land.

Land belonging to an unincorporated religious society does not pass by a deed executed by the trustees of the society which in its recitals, covenants, execution and acknowledgment purports to be the act of the trustees as such and not the act of the society holding the title to the land under the statutes re-enacting St. 1811, c. 6, § 3, now R. L. c. 37, § 12.

A suit in equity to remove a cloud from the title to real estate cannot be maintained unless the plaintiff has both the actual possession of and the legal title to the land in question.

In a suit in equity by an incorporated religious society, claiming under a deed from the trustees of an unincorporated religious society, to remove a cloud from the title of certain land of which it is alleged that the plaintiff is entitled to the fee, if it appears that the plaintiff would be entitled to the relief sought if it had a confirmatory deed from the unincorporated society but that otherwise its title is defective because the trustees of the unincorporated society had undertaken to make the conveyance from themselves instead of in behalf of the society and the title was not in them, an amendment in the nature of a supplemental bill may be allowed under Equity Rule 25, after the plaintiff has obtained a confirmatory deed from the unincorporated religious society, and if this is done a decree may be entered giving the plaintiff the relief sought, although otherwise the bill would be dismissed.

In a suit in equity to remove a cloud from the title to certain land which the plaintiff claims in fee, an agreement at a hearing of the case before a master that "it is admitted by both parties for the purpose of the trial that the title to the land in dispute is in the defendant, if it should be decided that the plaintiff is not the owner," adopted for the purpose of relieving the defendant from making further proof of title, does not prevent the court from making a conditional order that the plaintiff may have a decree for the relief sought in case he perfects his title by obtaining a certain confirmatory deed and thereafter amends his bill under Equity Rule 25.

When in a suit in equity to remove a cloud from the title to land under R. L. c. 182, §§ 6–10, persons are made defendants who are described as the heirs at law or legal representatives unknown to the plaintiff of a former owner of the land long since deceased, and after due notice such persons fail to appear, the case as to them is not ripe for final disposition until after an interlocutory decree has been made ordering that the bill be taken for confessed as against them.

BILL IN EQUITY, filed February 2, 1903, by the First Baptist Church of Sharon, a corporation duly established by law, alleging that the plaintiff acquired by deed dated January 15, 1903, from the Sharon Baptist Church, a voluntary religious organization, through George O. Nason and Winfred C. Holbrook, trustees of the church, a certain parcel of land in Sharon, with the buildings thereon, the property being used for church purposes ; that the Sharon Baptist Church at some time previous to the year 1833 purchased of Jeremiah Gould, then of

Sharon, the parcel of land described, paying therefor good and valuable considerations; that the plaintiff was unable to find any deed or other conveyance from Gould to the Sharon Baptist Church conveying the premises described, or to find any record of the same in the registry of deeds, but averred upon information and belief that Jeremiah Gould by deed dated May 22, 1832, conveyed the premises described to Elijah Hewins of Sharon; that Hewins on said May 22, 1832, was an officer and agent of the Sharon Baptist Church and received the conveyance in trust for the Sharon Baptist Church, the consideration of the deed having been paid by and in behalf of the Sharon Baptist Church, and that the deed operated as a cloud upon the title of the Sharon Baptist Church to the premises described; that Jeremiah Gould had long since deceased, and the names and residences of his heirs at law or legal representatives were unknown to the plaintiff;* that the Sharon Baptist Church, in the year 1833, erected upon the parcel of land described a church building, and that they have been in uninterrupted and peaceful possession of the property since before the time of the erection of the church building, and that there is no mortgage or other outstanding incumbrance on the property excepting such claim as might be made by the heirs or legal representatives of Jeremiah Gould.

The bill prayed that notice might issue to the next of kin, heirs at law and legal representatives of Jeremiah Gould and to all other persons interested, to appear and make answer to the bill; that it might be adjudged and decreed that the First Baptist Church of Sharon is seised in fee simple of the premises described; that the heirs at law, next of kin and legal representatives of Jeremiah Gould, and any other persons, might be perpetually enjoined from bringing any action to enforce any right or title to the premises;† that the plaintiff might have such further and other relief as the nature of the case and the rules of equity require; and that the deed of Jeremiah Gould to Elijah Hewins should be surrendered, cancelled and discharged.

---

* This allegation is referred to in the next to the last paragraph in the opinion as the sixth paragraph of the bill.

† In the next to the last paragraph of the opinion this is referred to as the third prayer of the bill.

Hattie M. Harper of Sharon appeared and answered specially, saying that she is not an heir of Jeremiah Gould, and denying each and every allegation in the bill; alleging that Hewins never conveyed the land away, nor was he ever paid for the land, but that he allowed by permission buildings to be placed thereon as personal property, which buildings the owners now have the right to remove: that she, the defendant, is now the owner of the land, but not the sole owner of the buildings; that she is the only devisee and heir at law (through her deceased mother) of Elijah Hewins; and that the plaintiff and those under whom it claims owe her and those under whom she claims a large sum of money.

No other person appeared as a defendant.

In the Superior Court the case was referred to Thomas E. Grover, Esquire, as master. His report contained the following findings:

The uncontested facts are these: January 15, 1903, George O. Nason and Winfred C. Holbrook, describing themselves as trustees of the Sharon Baptist Church, conveyed by quitclaim deed to the First Baptist Church of Sharon, a religious organization incorporated under the statutes of this Commonwealth, the tract of land in Sharon described in the bill, upon which the Sharon Baptist Church previously had erected a meeting house and sheds.

The First Baptist Church of Sharon was incorporated on October 10, 1902. · It is the successor of the Sharon Baptist Church above named, which was a voluntary, unincorporated religious society formed in 1814, and then began to hold its meetings for religious worship. These were continued uninterruptedly under the same organization until the corporation was created, and since then have been conducted under the direction of that body.

Of the trustees named in the deed Holbrook became a member of the society on June 12, 1902, and Nason on April 24, 1896. At a business meeting of the society held January 12, 1903, it was voted " that the Church instruct Winfred C. Holbrook and George O. Nason as trustees of the Sharon Baptist Church to convey all property or properties, both real and personal, now in the possession of or possessed by said church, by a deed or deeds

to an incorporated body called 'The First Baptist Church of Sharon, Massachusetts,' and that said conveyances shall be a true and lawful act of the said Holbrook and Nason."

The deed of Nason and Holbrook was as follows:

"Know all men by these presents that we, George O. Nason and Winfred C. Holbrook, both of Sharon, in the County of Norfolk and Commonwealth of Massachusetts, as we are Trustees of the Sharon Baptist Church, an unincorporated religious society of said Sharon, in consideration of one dollar and other valuable considerations, paid by the First Baptist Church of Sharon, Massachusetts, a corporation duly established by law, the receipt whereof is hereby acknowledged, do hereby remise, release and forever quitclaim unto the said The First Baptist Church of Sharon, Massachusetts, a certain parcel of land, with the buildings thereon, situated in said Sharon, and bounded and described as follows, viz: [Description.]    This conveyance is made in accordance with a vote of this society, the Sharon Baptist Church, passed at a meeting of the Society, a copy of which vote is annexed to and made a part of this deed.

" To have and to hold the granted premises, with all the privileges and appurtenances thereto belonging to the said The First Baptist Church of Sharon, and its successors and assigns, to their own use and behoof forever.

" And we do hereby, for our Society and its successors, covenant with the said grantee and its successors and assigns, that the granted premises are free from all incumbrances made or suffered by said Sharon Baptist Church, and that we will, and our successors shall, warrant and defend the same to the said grantee and its successors and assigns forever against the lawful claims and demands of all persons claiming by, through or under said Society, but against none other.

" In witness whereof we, the said George O. Nason and Winfred C. Holbrook, Trustees as aforesaid, hereunto set our hands and seals, this fifteenth day of January, in the year one thousand nine hundred and three.

" Dower clause erased before signing.

" George O. Nason        (Seal)

Winfred C. Holbrook "  (Seal)

"Commonwealth of Massachusetts.

"Norfolk, ss.                                        January 16th, 1903.

"Then personally appeared the above named George O. Nason and Winfred C. Holbrook, Trustees, and acknowledged the foregoing instrument to be their free act and deed, before me.

"Geo. C. Chisholm, Notary Public."

This deed was intended to convey the title in the land therein described from the society to the corporation, and whether it is sufficient for that purpose, and if it is, whether, when it was given, the Sharon Baptist Church was the owner of the land, were the principal questions to be determined in this case.

Elijah Hewins was a lifelong resident of Sharon. He was a deacon in the church, believing in the creed maintained by those of the Baptist faith, and from the time of its organization until his death on June 13, 1857, was one of its leading and influential members. He is the person referred to in the records of the society as "Elijah Hewins, Junior," and in one instance as "E. Hewins, Junior." Hattie M. Harper, the defendant, is his great-granddaughter and the only child of Alice Drake, deceased, who was his granddaughter and his sole heir at law. It was "admitted by both parties for the purpose of the trial that the title to the land in dispute is in the defendant, if it should be decided that the plaintiff is not the owner."

The records of the society were produced in evidence by the plaintiff. The defendant objected to their admission, but the master admitted them subject to her exception.

The first entry in these records is under date of October 10, 1814, and is signed "Elijah Hewins, Junior, clerk of said meeting." Later in the same month the record states: "We, the Baptist Brethren of Sharon, who propose to organize ourselves together as a Church of Our Lord Jesus Christ in this place, do hereby meet together, on Monday, the thirty-first day of November, A. D. 1814, and do proceed to that end in the following manner." Then follows a list of officers chosen, and the statement "Chose Brother Elijah Hewins, Junior, Clerk." This record is signed "E. Hewins, Junior, Clerk."

The other records are not important as bearing upon the questions in dispute until May 21, 1832. On that day a meeting of

the society was held and the records state that it was " Motioned and voted to build a meeting house as soon as subscriptions can be obtained to satisfy the building committee that such a house can be built from the resources thus obtained, such house to be vested in the hands of the church and under their control." " Voted: to purchase a piece of land south of Jeremiah Gould's house and store on the road leading to Foxboro and Massapog Pond, and that the building committee be empowered to purchase said lot containing about one acre for a site for said meeting house and such other purposes as the church may think proper, said committee to pay three hundred dollars and no more for said lot." " Voted: to choose a building committee of four to receive proposals and to make contracts for the society for said house of worship, Deacon Elijah Hewins, Jeremiah Richards, Israel Tolman and Leavitt Hewins." This record is signed " Elijah Hewins, Junior, Clerk."

On May 22, 1832, the day after the date of this record, Jeremiah Gould conveyed to Elijah Hewins by a warranty deed, stated to be in consideration of $300 paid by Elijah Hewins, a tract of land in Sharon " containing one acre more or less." This deed was recorded with Norfolk Deeds on September 20, 1842. One acre of land would include not only the land described in the plaintiff's bill but about as much more, and if more was included it is conceded that the land so included would extend southerly from the lot now claimed by the plaintiff upon land at present owned by one Otis Tolman and perhaps other land westerly of Tolman's. There was no evidence introduced before the master showing a conveyance by Elijah Hewins of any portion of the land conveyed to him by Jeremiah Gould, or of a deed or any record of a deed from him to the First Baptist Church of Sharon of the land in controversy.

The meeting house now standing was built by the society in 1833 on the land described in the bill, and this land is at least a part of the land conveyed by Gould to Hewins.

After the filing of the bill the clerk of the plaintiff received from Alice M. Drake, the granddaughter of Elijah Hewins and the mother of the defendant, the deed of May 22, 1832, from Gould to Hewins and also a small account book. This book, which she said was her grandfather's and kept by him, contained

entries of sums of money received and paid out in building the meeting house which were admitted to be in his handwriting.

On the cover of this account book appear these words, "Money received for Meeting-House," and at the top of the first page there is written, "Money received from sundry persons for building a Baptist Meeting-House in Sharon and for purchasing land for the same to stand upon." Then follow the dates, names and residences of the subscribers with the sums severally contributed by them. The first is "June 7, 1832, Lois Whittemore, Sharon, $30.00." There were other subscriptions in that year, and on April 25, apparently in the next year, appears the name of Elijah Hewins, making a gift of $150. He subsequently added $25 more to it. The total amount of the subscriptions is $459.98, the last one being dated December 10, 1833. In the same book upon the last page appear these entries :

"Baptist Church, Dr.

|  |  |  |
|---|---|---|
| To cash paid J. Gould | . . . . | $200.00 |
| 1833. | | |
| Apr. 25, To cash paid Peterson | . . . . | 41.00 |
| 25, To do paid Peterson | . . . . | 75.00 |
| June 18, To do paid Peterson | . . . . | 57.00 |
| July 9, To do paid Peterson | . . . . | 41.00 |
| Paid Peterson . | . . . . . | 125.00 |
| Paid Mrs. Johnson for 2 dinners of Obed Ellis and Ellis Johnson | . . . | .50 |
| Paid Ellis Johnson . | . . . . | 1.25 |
| Paid Darius Lothrop | . . . . | 1.75 |
| To 20 feet plank | . . . . . | .50 |
| | | $543.00 |
| Paid Seth Hewins . | . . . . | 1.00 |
| Paid Williard Gould for 10 meals . | . | 1.25 |
| | | $545.25 |
| Extra paint, Bell frames and Pews next aisles and Platform . | . . . | 8.00 |
| | | $553.25 " |

There are also in the book other entries, as follows: "Hall stove, $5.00 ; 47 3-4 lbs. funnel, $6.62 1-2 ; sheet for floor, .37 1-2 ;

total, 12.06 "; and also this entry: "For blinds on windows of Meeting-house, cost of blinds, $55.62." In the latter part of the book is this entry: "Received from sundry persons, namely," — then follow the names of persons who apparently gave small sums towards building the church, which were received subsequent to those above mentioned. The total of these sums, including "Funnell sold J. Carpenter, $2.47," is $8.47.

Otis Tolman, called as a witness, testified that he had known the premises for sixty years, and "supposed that at the time the meeting-house was built, it cost $500 or $600." There was nothing in the records showing how much the church cost.

The defendant made no claim to the buildings standing on the land. The meeting-house is about sixty feet in length by forty in width, and since it was built always has stood on the land where it now is. The means of maintaining a place of worship and paying the expenses connected therewith came mostly from voluntary contributions, although there was evidence that several years ago some income was obtained from the sale of pews.

Elijah Hewins, besides being a regular communicant of the church, took an active part in looking after the religious interests and prudential affairs of the society.

There was no evidence of any discussion between Elijah Hewins and the First Baptist Church of Sharon as to the ownership of the land where the church stands, and there was no evidence that either the society or Elijah Hewins, or his heirs or any one claiming under him, ever asserted any title to the land, except such as might be inferred from the facts stated; nor was there any evidence that the land ever was assessed for purposes of taxation.

The master found and ruled that the deed from the trustees to the First Baptist Church of Sharon was sufficient to enable the plaintiff to maintain the bill, and upon the facts stated he found that the Sharon Baptist Church had had such actual, exclusive and adverse possession of the premises described in the bill as to entitle the plaintiff to a decree.

The defendant filed the following exceptions to the master's report:

1. For that the master erred in his ruling in admitting the plaintiff's deed in evidence against the defendant's objection as the

deed of the voluntary association, as neither Nason nor Holbrook had been a member of the voluntary association nineteen years.

2. For that the master erred in admitting the plaintiff's deed in evidence against the defendant's objection as the deed of the voluntary association.

3. For that the master erred in admitting against the defendant's objections evidence tending to show adverse possession in the voluntary association.

4. For that the deed was without consideration.

5. For that the defendant excepts to the plaintiff's deed, its form, consideration and sufficiency thereof, for that no title of the voluntary association was conveyed in or by said deed.

6. For that the evidence offered by the plaintiff and the several witnesses did not show a membership of either Nason or Holbrook of nineteen years.

7. For that it is inadmissible to show adverse possession in such a voluntary association.

8. For that the possession shown, if admissible, tends only to show concurrent possession with Elijah Hewins and his heirs and legal representatives.

9. For that Hattie M. Harper is not an heir or legal descendant of Jeremiah Gould, and that the bill was not originally aimed at or against her under any then known or existing right.

10. For that the records, if admissible, tend to prove that no money could have been paid for the land, as the $200 is claimed to be a payment for lumber, and the several payments to Peterson are claimed to be payments to the carpenter who furnished and performed the labor.

11. For that the master erred in his ruling in admitting the records of the voluntary association in evidence.

The case was heard on the master's report and the defendant's exceptions thereto by *Harris*, J. He made a decree "that the First Baptist Church of Sharon is seised in fee simple of the premises described" in the bill, giving the description ; and "that the heirs at law, next of kin and legal representatives of Jeremiah Gould and Elijah Hewins, and all other persons, and more especially Hattie Harper, be and hereby are, perpetually enjoined from bringing any action to enforce any right, title or claim to said premises." The defendant appealed.

*J. Everett*, for the defendant.

*R. E. Belcher*, for the plaintiff.

BRALEY, J. The more important of the eleven exceptions taken by the defendant, Harper, to the master's report, refer to the acquisition of title by the plaintiff's grantor to the land described in the bill, and to the vesting of that title in the plaintiff. That Elijah Hewins, the great-grandfather of the defendant, under whom she claims, held at his death the record title to the property then in the physical possession of a voluntary religious organization known as The Sharon Baptist Church is undisputed. The facts, however, set forth in the report make it plain that after purchasing the land in 1832, a meeting house was built thereon in 1833 for the use of the society, which since then has uninterruptedly occupied the premises for religious worship until merged in the corporation, which is the present plaintiff. There would seem to be little, if any, doubt from the entries made in Hewins's book of accounts that the funds required to buy the land and erect and furnish the building were raised by voluntary subscriptions, which were expended by him for this purpose. It also is expressly found that during his life he was a regular attendant upon the services, and impliedly if not expressly must have acquiesced in the use to which the premises were being put, and that he did not assert nor have his heirs during the forty-five years which have elapsed since his death asserted any interest in the land.

To overcome the presumption which arises under these findings that a title by limitation was acquired, the defendant takes the position that being a voluntary religious organization it could not at the date of the deed, or for more than twenty years thereafter acquire by disseisin a fee, because not being a corporation it was incapable of taking a grant of real property. If there was no artificial person whom the law could recognize as a disseisor no matter how great the lapse of time a title by limitation would not ripen as against the owner of record.

But this question is settled against the defendant by reason of the statutes in force during the entire period necessary to create a title by adverse possession. By the St. of 1811, c. 6, § 3, re-enacted in the St. of 1834, c. 183, § 5, and in Rev. Sts. c. 20, § 25, an unincorporated religious society was enabled to

acquire, use and enjoy property in the same manner as if duly incorporated, and no change is found in these statutory provisions in subsequent revisions. Gen. Sts. c. 30, § 24. Pub. Sts. c. 39, § 9. R. L. c. 37, § 12. The effect of these enactments is that for the purpose of taking, holding and transmitting property a voluntary religious society possessed all the qualifying attributes of a duly organized corporation. *Fisher* v. *Whitman*, 13 Pick. 350, 356. *Lawrence* v. *Fletcher*, 8 Met. 153, 163. *Silsby* v. *Barlow*, 16 Gray, 329. *Hamblett* v. *Bennett*, 6 Allen, 140, 144. *Glendale Union Christian Society* v. *Brown*, 109 Mass. 163, 165. *Attorney General* v. *Clark*, 167 Mass. 201, 204.

With the exceptions which relate to this question, the admission of certain evidence in connection therewith must be considered. For the purpose of showing the original organization of the voluntary society as well as its action when contemplating the purchase of the lot now in controversy, and the erection of the house of worship, the entries shown on the record book of the society were admissible. This body having for the limited purpose given to it by statute the power to acquire real and other property possessed the implied correlative right inherent in a duly organized corporation to show by its records, the authentication of which does not appear to have been questioned, not only its organization, but the vote taken to purchase the land and erect the building. *Fisher* v. *Whitman, ubi supra. Stebbins* v. *Merritt*, 10 Cush. 27. A further objection to the admission of this evidence was that it tended to prove self serving declarations in derogation of the defendant's title, but the record was relevant to establish the fact that in taking the deed of the land, though in his own name, he was acting in its behalf rather than purchasing for himself, for it is stated by the master that the several entries in evidence were signed by Elijah Hewins as clerk, who must be presumed to have known that the votes which he recorded were inconsistent with any subsequent claim of ownership by him, and those claiming under him must be charged with his knowledge, as well as bound by the entries in his handwriting found in his account book, relating to the expenditure of the money which had been contributed. *Pickering* v. *Reynolds*, 119 Mass. 111.

Nor is the defendant's next contention that the occupation of

the society was permissive rather than adverse tenable.    After the meeting house was built and occupied, a regular attendance by him upon divine worship does not constitute a user on his part of the property in common with the society, or its members, so that it can be said there was a mixed possession by both, for his attendance was properly found to have been not as an owner of the soil, but as a member and communicant of the society.

It is obvious that the society was in sole occupation, and Hewins does not appear to have asserted any individual right antagonistic to its claim of a freehold shown by the erection and maintenance of the church, and the pecuniary support of regular preaching.

It must have been generally understood that these things were not being done by his permission and for his sole benefit as a landowner, and such an understanding is sufficient, as no doubt the master found, to repel any presumption that when he was present upon these occasions he attended for the purpose of making a technical entry in conformity with his legal title.

At his death the disseisin had continued for more than the full statutory period, and not only was any right of entry barred, but by the operation of the statute of limitations the time within which a real action must be brought had passed, and the estate had vested in the society as effectually as if originally deeded to it instead of having been conveyed to him.    *School District No. 4* v. *Benson*, 31 Maine, 381, 384.    *Leffingwell* v. *Warren*, 2 Black, 599, 605.    *Scott* v. *Nixon*, 3 Dr. & War. 388, 405, 407.    *Stearns* v. *Janes*, 12 Allen, 582, 584.

If, however, it is manifest that he had lost by lapse of time any right of entry, or of action to repossess the estate, the defendant further insists that the deed by which it was the intention to convey the premises to the plaintiff was insufficient as a conveyance to pass title to the property.    An examination of this instrument clearly shows that in terms it does not purport to be the grant of the Baptist Church of Sharon, acting by its trustees duly authorized to convey, but is in recitals, covenants, execution and acknowledgment their individual act.    But having no vested interest in the land they were authorized to transfer only the title of their principal, and as this has not been done, the fee did not pass, but remained in the original society.

*Brinley* v. *Mann*, 2 Cush. 337.   *Haven* v. *Adams*, 4 Allen, 80, 87. *Murphy* v. *Welch*, 128 Mass. 489, 491.

Under R. L. c. 182, §§ 1–5, before the plaintiff could have maintained a petition to require the defendant to bring suit to try the validity of her title it would have been obliged to have proved its exclusive possession, and that it either was seised of an estate of freehold in the premises, or held therein an unexpired term of not less than ten years. *Tompkins* v. *Wyman*, 116 Mass. 558.   *Blanchard* v. *Lowell*, 177 Mass. 501, 504.   But mere possessory titles are not recognized by our statute, and in equity the general doctrine is well settled, that a bill to remove a cloud from the land affected cannot be maintained unless both actual possession and the legal title are united in the plaintiff. *Holland* v. *Challen*, 110 U. S. 15, 24.   *Orton* v. *Smith*, 18 How. 263.   *Ward* v. *Chamberlain*, 2 Black, 430, 445.   *Frost* v. *Spitley*, 121 U. S. 552.   *Ely* v. *New Mexico & Arizona Railroad*, 129 U. S. 291.   *Devonsher* v. *Newenham*, 2 Sch. & Lef. 197, 208.   *Clouston* v. *Shearer*, 99 Mass. 209.   *Hinchley* v. *Greany*, 118 Mass. 595, 598.   *Allen* v. *Storer*, 132 Mass. 372, 376.   *Smith* v. *Smith*, 150 Mass. 73.

That the plaintiff claimed to have both is manifest from the frame of the bill, which alleges that its title is impeached by the outstanding deed to Hewins, and in the second prayer asks that a decree may be entered that it is seised in fee.   But although the plaintiff apparently includes among its members those who formerly worshipped under the name of the voluntary association, and is in actual possession exercising dominion over the premises, and also may be said to hold by an inchoate paper title, which requires only the formal act of a confirmatory deed in proper form to perfect its ownership, yet the recorded deed, the cancellation of which is the relief usually given, puts in jeopardy only the paramount title, which is in the plaintiff's grantor.   *Sawyer* v. *Cook*, 188 Mass. 163, 170.   If, however, the plaintiff's ownership were thus confirmed, then, under Equity Rule 25, by an amendment in the nature of a supplemental bill, and in support of the original bill, setting forth that such a conveyance had been made, a decree in the form asked for could be granted.   *McMurtrie* v. *Guiler*, 183 Mass. 451.

Nor does the admission of the parties made for the purpose of

the trial before the master work an estoppel preventing the plaintiff from thus perfecting its title, as this agreement merely relieved the defendant from making further proof of her title by descent.

If what has been said disposes of the principal exceptions there are some minor questions that remain for consideration.

Although the bill originally was not framed to include the defendant by name, yet upon being summoned in to defend she appeared and joined issue by an answer to the merits, thus waiving any defects of form.

If the final decree, although silent as to any disposition of the master's report or of the exceptions, must be considered by implication as overruling the exceptions and confirming the report, yet, as this decree must be reversed, we deem it proper to refer to the disposition made of the third prayer of the bill. By R. L. c. 182, §§ 6–10, the general description of parties found in the sixth paragraph of the bill, and in this prayer is authorized, but none of the defendants within this description having appeared after due notice and no interlocutory decree taking the bill for confessed having been ordered, the case independently of the invalidity of the plaintiff's title under § 10 was not ripe as to them for final disposition. *Frow* v. *De La Vega*, 15 Wall. 552.

Because of the failure of the plaintiff to establish its title, the decree of the Superior Court must be reversed, and a decree entered sustaining the second and fifth exceptions to the master's report, but overruling the remaining exceptions, and confirming so much of the report as relates to them, with the further provision that if the plaintiff, within such time as that court may order, perfects its title by a proper conveyance a decree may be entered granting appropriate relief, but if this is not done the bill is to be dismissed.

*Ordered accordingly.*