### WILLIAM D. MARVEL *vs.* JOHN W. COBB.

Bristol.   October 27, 1908. — November 28, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Equity Jurisdiction,* To compel reconveyance of land obtained by fraud, Laches.
   *Fraud.   Real Action.*

A bill in equity alleged that the defendant by deceit and fraud induced the plaintiff's father to execute and deliver to him in April, 1890, a conveyance of certain real estate and a mortgage of certain other real estate, that the plaintiff's
father died intestate in October, 1890, and that a brother of the plaintiff was appointed administrator of his estate, that thereafter in 1891 the mortgaged property was advertised for sale by the defendant for breach of condition in the
mortgage, that the plaintiff attended the sale and protested against it, declaring
the mortgage to be fraudulent and to have been obtained by false pretenses by
the defendant, that, after one adjournment of the sale, the mortgaged property
was sold to one R., " the subservient tool and confidential agent of the defendant "
for $3,000 after the plaintiff and the administrator of the estate of the father had
bid $6,000, and was immediately conveyed by R. to the defendant. It also was alleged that the plaintiff was absent from this State from 1891 until the middle of
1902, that he was advised repeatedly by the administrator that his counsel and
the defendant's counsel were negotiating and in progress of effecting a settlement, that the two counsel " were, tacitly if not actually, in harmony to postpone
and prevent any settlement "; that many portions of the land had been sold to
persons who were not parties to the suit, and that in 1903 the plaintiff had
obtained an assignment from the administrator of the right to bring the suit.
The bill contained no offer to pay what might be found to be equitably due to
the defendant from the estate of the plaintiff's father. It was filed in October,
1906, and, except as above stated, contained no excuse for delay.   The defendant demurred.   *Held,* that the demurrer should be sustained because of
laches of the plaintiff, because of lack of necessary parties, and because of lack
of an offer of the plaintiff to pay to the defendant upon a reconveyance what
might equitably be due him.

Where the owner of certain land executed and delivered a mortgage of it and died
intestate, and the mortgagee made a fraudulent alteration in the mortgage deed
so that land not included in the deed as originally executed was included in the
description in the deed as altered, and the land as described in the altered deed
was sold at a foreclosure sale to a stranger who entered into possession of it, an
heir of the mortgagor should enforce his right in the land so sold by writ of
entry and not by a bill in equity.

BILL IN EQUITY, filed in the Superior Court for the county of
Bristol on October 20, 1906, and amended on July 6 and December 26, 1907, praying that the defendant " be ejected from and
execute a full and complete surrender " of property described

in the opinion, for an accounting, for damages and for an attachment.

The bill as amended occupied twenty pages of the printed record.*

The defendant demurred. The demurrer was heard by *Schofield*, J., who filed the following memorandum:

" This case comes up on demurrer filed February 6, 1908, to the plaintiff's bill as finally amended. The causes of action relied upon in the bill arose in 1890 and 1891. The plaintiff in 1891, according to allegations in the thirteenth paragraph of the bill, had knowledge of facts sufficient to justify him in beginning proceedings against the defendant to set aside the deed of the Pocasset property and the mortgage of the Patuisset property from Dexter Marvel to the defendant, and the foreclosure sale under the mortgage. As an heir at law of Dexter Marvel he had a right to begin such proceedings without waiting for the settlement of the estate of Dexter Marvel in the Probate Court. This bill of complaint was filed October 20, 1906. It contains no allegations of fact sufficient to excuse the long delay of the plaintiff, and upon the face of the bill he is guilty of laches. The plaintiff has conducted the case in person and shown ability and zeal in presenting the various points to the court. It is assumed that no further amendment to the bill is desired, and therefore the order to be entered upon the demurrer is, ' Demurrer sustained, and bill ordered to be dismissed.' "

The bill accordingly was dismissed, and the plaintiff appealed.

*W. D. Marvel, pro se.*

*A. Fuller & W. J. Davison* for the defendant, submitted a brief.

LORING, J. The bill in this suit is multifarious and argumentative. In addition, while it charges the defendant with fraud, cheating and forgery, it is almost entirely lacking in stating facts justifying those charges.

So far as a statement of what is thus charged can be made it is in substance as follows:

The plaintiff is the son but not the only heir of his father, Dexter Marvel, a citizen of Massachusetts, who died intestate at Lynn, in Essex County, on October 28, 1890.

---

* Throughout the proceedings the plaintiff, who was not a lawyer, acted for himself.

In April, 1890, and before, Dexter Marvel was the owner of two large tracts of land in the town of Bourne, Barnstable County, laid out in lots for summer cottages, and known as Pocasset Heights and Patuisset property, respectively. These two tracts of land were subject to a mortgage held by the Bristol County Savings Bank, in the sum of $6,000.

In April, 1890, the defendant, at the request of the plaintiff's father, advanced the money necessary to take up this mortgage. The plaintiff's father conveyed to the defendant the Pocasset Heights and mortgaged to him the Patuisset property. In payment for the Pocasset Heights the plaintiff's father received from the defendant one hundred and five shares of the Cobb Stove and Machine Company. As security for the money advanced by the defendant to take up the prior mortgage for $6,000 on both properties, the defendant received from the plaintiff's father, in addition to the mortgage on the Patuisset property, the one hundred and five shares received as the purchase price of the Pocasset Heights property.

There is a long statement of false reports as to the condition and make up of the stove company, but there are no allegations connecting that statement with the transactions between the plaintiff's father and the defendant. It is stated however that this transaction throughout was a fraudulent one on the defendant's part. It is also alleged that at the time of this transaction the plaintiff's father was ill and " unable to properly attend to his affairs."

For the breach of some condition in the mortgage to him of the Patuisset property the defendant advertised that property for sale on August 10, 1891. The plaintiff went to Pocasset and saw Cobb on August 8, 1891, and proposed that the mortgage of the Patuisset property and the deed of the Pocasset Heights property should be cancelled and the shares in the stove company returned and the amount due the defendant determined by arbitration. This the defendant refused to do. Thereupon the plaintiff notified the defendant " that the pretended or so-called mortgage was fraudulent," that he should " denounce the mortgage as a fraud and forbid the sale." He also notified the defendant that the proposed mortgage sale had not been properly advertised. In consequence of the latter no-

tice the sale was adjourned until August 17, 1891. At the auction sale on that day the plaintiff and the administrator of his father's estate were present. The plaintiff "under advice of counsel . . . then and there made protest forbidding the sale and declared the so-called mortgage to be not only fraudulent but obtained by said Cobb under false pretenses." In spite of the protest the auctioneer proceeded with the sale. The administrator and the plaintiff each made a bid of $6,000, interest and expenses, but the property was declared sold to one E. M. Reed for $3,000. It had been alleged in an earlier paragraph of the bill that E. M. Reed was "the subservient tool and confidential agent of" the defendant. It is further alleged in the bill that immediately after the foreclosure sale Reed conveyed the Patuisset property bought in by him at the sale to the defendant.

It is also alleged in the bill of complaint that the plaintiff's father's estate "was technically bankrupt"; that he was the largest creditor of it and that it was agreed between the plaintiff and "his co-heirs" that all outside debts should be paid and the residue then left should be assigned to the plaintiff. Apparently pursuant to that agreement the administrator, on August 19, 1902, assigned to the plaintiff all personal property and rights of action then vested in him.

The bill was sworn to on October 18, and filed on October 20, 1906. That is to say, sixteen years and six months after the deed and mortgage which it is now sought to set aside for fraud were made, — sixteen years after the death of the father and fifteen years and two months after the foreclosure sale which the plaintiff now seeks to have set aside.

If it is assumed that the plaintiff's father was induced by false and fraudulent representations of the defendant (first) to convey to him the Pocasset Heights for one hundred and five shares of the Stove Company, and (second) to mortgage the Patuisset property to him, he had a right to set aside that conveyance and that mortgage on returning the one hundred and five shares and the money lent to him on executing the mortgage, or he could have brought an action for damages based upon the fraud and deceit. These rights of action passed to and were vested in the administrator of his estate. The action for fraud and deceit being an action of tort, was barred by force

of R. L. c. 202, §§ 2, 10, at the end of six years, that is to say, in 1896, and the plaintiff can get no better standing by bringing this suit in equity. *Ela* v. *Ela,* 158 Mass. 54. The right to avoid the sale and the loan was barred at the same time. *Dodge* v. *Essex Ins. Co.* 12 Gray, 65. The plaintiff has not alleged any fact bringing the administrator of his father's estate within the disabilities prescribed by statute by reason of which a longer time is given a plaintiff in which to bring his action. These causes of action therefore were barred when the administrator assigned them to the plaintiff in 1903. Of course the plaintiff has no greater rights than his assignor (the administrator) had.

The other cause of action to be gathered from the statements made in the bill of complaint is the right to set aside the foreclosure sale of the Patuisset property on the ground that the administrator and the plaintiff bid more than the $3,000 for which it was sold to Reed.

The plaintiff's father died seised of the equity of redemption in the Patuisset property, and upon the allegations of this bill (which are taken to be true for the purpose of disposing of the defendant's demurrer) with a right to avoid that mortgage for fraud. The equity of redemption descended to his heirs, including the plaintiff among others.

So far as this cause of action is concerned, the bill is fatally defective for want of an offer to pay what is now equitably due on the mortgage, and because it is alleged that many sales of the Patuisset land have been made to many persons, and that all the remaining estate was conveyed to one Stone with intent to defraud the plaintiff. In a suit to which Stone is not a party the foreclosure of the land cannot be set aside. But apart from the lack of an offer to redeem, and apart from the fact that the land not sold to third persons now stands in the name of Stone, if it be assumed that the plaintiff is ready to pay the whole mortgage debt for the land not sold to third persons (since the grantees of the land sold have not been made parties), the plaintiff is barred by his own laches.

The right to avoid a foreclosure sale which is voidable must be exercised within a reasonable time, even if the mortgaged land is still held by the purchaser at the foreclosure sale. *Learned* v. *Foster,* 117 Mass. 365. *Fennyery* v. *Ransom,* 170

Mass. 303. *Tetrault* v. *Fournier*, 187 Mass. 58. In the absence of sufficient excuse, fifteen years and two months is more than a reasonable time. See *Learned* v. *Foster*, *Tetrault* v. *Fournier*, *ubi supra.*

The first excuse alleged by the plaintiff is that he was absent from the State from 1891 until "the middle of the year 1902." That is no excuse to one who does not set up ignorance of the cause of action at any time. See *Wells* v. *Child*, 12 Allen, 330; *Naddo* v. *Bardon*, 2 C. C. A. 335. The plaintiff was present at the foreclosure sale, and does not plead ignorance.

His next excuse is that he "was repeatedly and frequently advised by the said administrator that his counsel and the counsel for the said John W. Cobb were negotiating and in progress for a settlement; that said counsel for said administrator and said E. M. Reed counsel for said Cobb were friends of intimate professional and personal relations and associations. Such condition of things continued without result, and, as complainant is informed and believes, and upon such avers, that with the knowledge of and at the behest of said John W. Cobb, said counsel for said administrator and said counsel for said Cobb were, tacitly if not actually, in harmony to postpone and prevent any settlement, and such has been the result." If it be assumed that the counsel for the administrator was acting as counsel for the plaintiff, his inaction is no excuse in the absence of instructions by the plaintiff that he was ready to redeem.

His next excuse is that until he obtained the assignment from the administrator he could not bring this bill, and that it was not until 1903 that he succeeded in getting that assignment. That is not so. His right to redeem belongs to him as one of the heirs to whom the land descended subject to the mortgage.

There is one allegation which remains to be considered. It is that contained in paragraph numbered seven, succeeding paragraph numbered twenty-three. It is there in substance alleged (as we understand it) that "when the said ('original') documents were produced in court," the plaintiff "discovered" that a fraudulent alteration had been made in the mortgage of the Patuisset property which rendered that mortgage void. The alteration consisted in the erasure of the numbers 327 and 328 in the enumeration of lots originally contained in the Patuisset

property previously sold, and therefore not included in the mortgage.   As to this the amended bill contains this statement: "Complainant has since the commencement of this action obtained knowledge of and now asserts his charges as a fact that at the time of obtaining said so-called mortgage and said so-called deed, collateral thereto (being all one inseparable transaction) by fraud, trickery, deceit and overreaching, the defendant John W. Cobb with malicious intent and in aggravation of his fraudulent practices in obtaining the said so-called mortgage and so-called deed made or procured to be made fraudulently and with felonious intent of effectually defrauding said Dexter Marvel, certain erasures (forgeries) in said so-called mortgage." It may be doubted whether this amendment to the bill is to be construed on the whole to state anything more than the fact that an erasure appeared on the face of the original mortgage when it was produced in court.   But assuming in favor of the plaintiff that this is not so and that this amendment is an allegation that the mortgage was rendered void by a fraudulent alteration made by the defendant, since the plaintiff is not in possession, his remedy is a writ of entry.   See for example *First Baptist Church of Sharon* v. *Harper*, 191 Mass. 196.

*Decree affirmed.*