BARNEY D. MANN *vs.* IRMA HELEN BAILEN.

Suffolk.    December 30, 1935. — February 25, 1936.

Present: RUGG, C.J., CROSBY, FIELD, LUMMUS, & QUA, JJ.

*Mortgage*, Of real estate: breach of condition, foreclosure. *Auction. Evidence*, Extrinsic affecting writing. *Equity Pleading and Practice*, Parties.

At the hearing of a suit in equity to have declared invalid a foreclosure of a mortgage securing a note which was dated the first day of a month and stated that interest was due monthly, it was proper to exclude evidence offered to show that the parties by their conduct had construed the note as permitting payment of interest at any time during the month, the language of the note being unequivocal and requiring payment on the first day of each month.

A foreclosure sale of mortgaged property after breach of condition of the mortgage by failure to pay interest and taxes was not invalid, although the holder of the mortgage wrongly had collected rents from tenants of the property equal to the interest but not to the taxes and although the property was sold on a bid lower than that of another who had not made a *bona fide* bid.

A bill in equity against a mortgagee to avoid a foreclosure sale should join the purchaser as a party defendant.

BILL IN EQUITY, filed in the Superior Court on September 6, 1929, seeking to have a foreclosure of a second mort-

gage of real estate declared illegal and void and for an accounting respecting rentals collected by the defendant after an entry for the alleged purpose of foreclosure.

The suit was referred to a master, whose report was confirmed by a decree entered by order of *Qua*, J. A final decree dismissing the bill was entered by order of *F. T. Hammond*, J. The plaintiff appealed.

The case was submitted on briefs.

*J. H. Blanchard, L. H. Glaser, & S. Andelman,* for the plaintiff.

*J. C. Johnston & H. Snyder,* for the defendant.

CROSBY, J. This is a bill in equity brought for an accounting, and to set aside a foreclosure sale, conducted by the defendant upon properties of the plaintiff, on the ground that it was illegal and void. The case was heard by a master together with a suit in equity in which the defendant in the present case, Irma Helen Bailen, is plaintiff and the plaintiff Barney D. Mann is defendant.

The master found that on August 1, 1924, the plaintiff executed and delivered to Ethel Hurwitz and Eva Rotman two promissory notes, each for the sum of $16,000; that these notes were to be secured by second mortgages on apartment house property numbered 1665 and 1669 on Commonwealth Avenue in Boston. On June 18, 1925, these two notes were transferred to the defendant. At that time there was a balance due on each note of $14,000. These apartment buildings had been erected by Barney Hurwitz and Morris Rotman, husbands of the payees of the notes. On each of these buildings Rotman and Hurwitz had placed a $50,000 first mortgage, and subject thereto they had conveyed the premises to the plaintiff, who had executed and delivered to Eva Rotman and Ethel Hurwitz the notes and second mortgages here in question.* On October 1, 1928, in addition to interest there had been paid on the principal of each of these notes $9,800, leaving a balance due on each note of $6,200, making a total of $12,400 due on the mortgages. The notes were dated

---

* These notes were indorsed by the husbands of the payees. — REPORTER.

August 1, 1924, and the interest at the rate of six per cent per annum and instalments of interest of "at least $200" were payable monthly. The interest due on those notes on October 1, 1928, never has been paid. Tax bills in Boston for the year 1928 had all been sent out by the first week in September, and interest thereon began to run on October 2, 1928, but dated back to September 15. The taxes for that year never have been paid by the plaintiff. The master further found that on October 10, 1928, several letters were written and directed to the several tenants of the buildings stating that the defendant as mortgagee had entered for breach of the conditions of her mortgages and demanding that the rent should thereafter be paid to her. These letters were drawn and signed in behalf of the defendant by Roger B. Brooks, an attorney employed in the office of Samuel L. Bailen, who is the husband of the defendant and admittedly had full authority to act throughout in the premises in her behalf. Although these letters were written not by the defendant nor by her husband in her behalf, but by Mr. Brooks, full responsibility therefor is assumed by Mr. Bailen.

Immediately following notices to the tenants rents were collected by one Murphy, who had theretofore acted in the same capacity for the plaintiff. He immediately turned them over to Rotman and Hurwitz who received the same on account of the defendant. The master found that the rentals for the month of October were $1,207 less $55, or $1,152, and were for the same amount for the month of November. He made no finding as to the amount of the expenses for the months of October and November to be paid from any sum so collected.

The master further found as follows: On October 13, 20, and 27, 1928, the defendant published notice of a proposed foreclosure sale under the power contained in her mortgages, the date of such sale being November 5, 1928. On that day the defendant's husband met the plaintiff and his attorney on the premises, the sum of $100 was paid by the plaintiff to cover the costs of foreclosure, and the sale by agreement was continued to November 13, 1928,

At the same time the foreclosure sale of the other buildings was continued to the same day. On November 13, 1928, foreclosure sales purporting to be made under the mortgages of the defendant took place. The purchase price stated was $1,000 in each instance, and the purchaser named in the deed was J. Agnes O'Neil, a stenographer in the office of Mr. Bailen. She did not pay any consideration therefor, and acted solely in behalf of the defendant. At the foreclosure sale one Burns, who was employed by Harry E. Burroughs, attorney for the plaintiff, made alternate bids with Mr. Bailen for one of the properties, the highest bid being made by Burns in the sum of $3,750. Burns was called upon by the auctioneer to produce the required deposit of $1,000. He did not do so but asked permission to examine the house. Thereupon, at the direction of Mr. Bailen, the auctioneer declared the bid of Burns to be a mere pretence and started the bidding again, and the property was sold to Mr. Bailen on his bid of $1,000. Substantially the same procedure took place on the sale of the other property, held immediately thereafter. Burns was bidding in behalf of the plaintiff; he had no interest of his own in the matter, and therefore there was apparently no reason whatever why he should make an examination of the premises. The plaintiff was present at the sales, and did not insist that the bid of Burns should be recognized. The defendant had offered to discount fifty per cent of the balance due on her mortgages, but the plaintiff was unable or unwilling to accept. Rotman and Hurwitz had offered to assist the plaintiff in raising money to the extent of "six or seven thousand dollars," to prevent the foreclosure, but he declined help, stating that less than $20,000 would be of no avail to him. Mortgages upon his other properties were being foreclosed at the same time. It was also found that no *bona fide* bid was made by Burns at the foreclosure sale.

The master states that "Assuming the burden of proof to be upon the plaintiff to sustain the position that the foreclosure was in pursuance of a fraudulent conspiracy, I have taken into consideration the fact that no pecuniary

advantage accrued to the defendant by reason of the transfer from Miss O'Neil to Rotman and Hurwitz, and the want of this element has seemed to me to be sufficient reason for the rejection of such collusive agreement."* For the same reasons the master states that he is unable to find that there was any collusive agreement between the defendant and one Rudnick and one Watchmaker (who held mortgages on other property of the plaintiff) or either of them.

The plaintiff contended that there was no breach of the conditions of the mortgages when the foreclosure proceedings were instituted, and that there was evidence tending to show that by the conduct of the parties they recognized as the true construction of the notes that a payment made at any time within the calendar month would be a compliance with the terms of the notes. The master properly excluded the evidence on the ground that the language of the notes was plain and free from ambiguity.

The master states that, in writing and signing the letters to the tenants by Mr. Brooks, his authority to act on behalf of the defendant was not questioned; that the testimony of Mr. Bailen, the husband of the defendant, was that the earliest entry of the mortgagee for the purpose of foreclosing the mortgages or taking possession was on November 13, 1928; and that the collection of rents before that date was therefore not justified by any entry of the mortgagee.

The master also made the following findings: The taxes due on the property were approximately $2,800. There was no clause in the notes rendering the entire balance due upon failure to pay any monthly instalment. There was in the hands of the defendant at the time of the alleged foreclosure sale a sum more than sufficient to pay the instalments due upon the mortgage notes at that time, but there was not in her hands sufficient money to pay the taxes then

---

* There were findings by the master that, on the same day that Miss O'Neil received her foreclosure deed, she "gave back to the defendant a mortgage in the sum of $11,800, being the entire balance on said mortgage notes and, subject thereto, on the same day, conveyed to Eva Rotman and Ethel Hurwitz . . . a deed of the same premises, all of which instruments were recorded simultaneously." — REPORTER.

due upon the mortgaged properties. The first mortgage held by the Danvers Savings Bank on the property had been extended to February 10, 1935; there was no default in the conditions of that mortgage on November 13, 1928; and no default in the conditions of the mortgage held by the Gardner Savings Bank on that date. The fair market value of each of the buildings on November 13, 1928, the date when the defendant took possession under her mortgage for the purpose of foreclosing it, was $80,000.

A motion to confirm the master's report was allowed July 3, 1931, and on the same date an interlocutory decree confirming the report was entered, the exceptions of the defendant having been waived in open court. On April 25, 1934, an order was entered for a decree dismissing the bill with costs. On September 4, 1935, a final decree was entered dismissing the bill with costs in the sum of $17.50. From the order and the decree the plaintiff appealed.

Whether the present suit be construed as a bill to set aside the foreclosure sale, or a bill for an accounting as the result of an improper foreclosure of the mortgages on the properties, it is plain that it cannot be maintained in view of the findings of the master. It is manifest that there was a breach of the conditions of the mortgages in the failure of the plaintiff to pay the interest after October 1, 1928, and to pay the taxes due on the mortgaged properties. The bill alleges that the sale of the premises described in the mortgage was unlawful and illegal. The prayers for relief are that the sale of the property be declared illegal and void. The sole defendant named in the bill is Irma Helen Bailen, the mortgagee of the premises at the time of the foreclosure sale. It is a general rule, subject to some modification for convenience, that all parties having an interest in the subject matter of the bill must be joined as parties. *Cassidy* v. *Shimmin*, 122 Mass. 406. *Morse* v. *International Trust Co.* 259 Mass. 295, 300. *Commonwealth Trust Co. of Pittsburgh* v. *Smith*, 266 U. S. 152. The suit is brought against the mortgagee only although there were other necessary parties. All persons who have an interest in the subject matter of the suit who may be

affected by the decree must be made parties so that future litigation may be avoided and complete justice done. *Sears v. Hardy,* 120 Mass. 524. *Marvel v. Cobb,* 200 Mass. 293. *Bancroft Trust Co. v. Canane,* 271 Mass. 191, 198. The master found that "as a result of the foreclosure the defendant received nothing in payment of her mortgage deeds and did not obtain even the discharge of the taxes due upon the properties, and the entire effect of the foreclosure, if valid, was to extinguish the equity of the plaintiff and of any ability on his part to avail himself thereof without in any way creating or preserving any corresponding advantage to the defendant or any change in her ability to obtain payment of her notes except to create a paper credit to the plaintiff in the sum of $1,000 on each of said notes, being the amount of the bid at each of the foreclosure sales." There is nothing in the master's report to show that the foreclosure sale by the defendant was not conducted fairly and in good faith. It was authorized because of failure of the plaintiff to pay interest and principal on the mortgage indebtedness, and to pay taxes on the real estate which were due and amounted to approximately $2,800. Although there were more than sufficient funds collected from tenants by the defendant to pay the instalments due upon the mortgage notes at the time of the foreclosure sale, there was not in the hands of the defendant sufficient money to pay the taxes then due upon the mortgaged properties.

The interlocutory decree confirming the master's report, the exceptions of the defendant having been waived in open court, fails to show any error. The final decree dismissing the bill with costs in the sum of $17.50 is affirmed.

*Ordered accordingly.*