368

## UNITED STATES v. YATES.

District Court, E. D. Virginia, at Norfolk.
March 18, 1932.

Alvah H. Martin, Asst. U. S. Atty., of Norfolk, Va.

Isaac I. Yates, in pro. per.

WAY, District Judge.

This is an action at law by plaintiff, United States of America, to recover from defendant, Isaac I. Yates (formerly a commander, now a captain, in the United States Navy), alleged overpayments of salary made to him between October 21, 1912, and October 1, 1915, aggregating $220, under the following circumstances: -

Defendant, Isaac I. Yates, on May 20, 1897, was appointed a cadet in the United States Navy, and continued to serve as such until June 7, 1903, when he was appointed and commissioned an ensign. He continued to serve as ensign until October 21, 1904, when he was commissioned an assistant naval constructor with the rank of lieutenant, jun-

ior grade. He continued to serve as such until February 3, 1908, when he was commissioned an assistant naval constructor with the rank of lieutenant. On August 22, 1912, his nomination to be a naval constructor "from the 21st day of October, 1912, upon the completion of 8 years' service as Assistant Naval Constructor, subject to examinations required by law," was received by the Senate; confirmed as such August 23, 1912; and he was commissioned November 5, 1912. .

During all those periods he was an officer in the Navy on the active list. He did not resign one commission to accept one in the next higher grade; his service being continuous.

After thus being promoted to the grade of naval constructor in 1912, the various paymasters who held his accounts paid him at the rate of $3,200 per annum until October 1, 1915; that being the pay for naval constructors prior to the law of 1908.

The auditor for the Navy Department passed these payments as correct until October 1, 1915.

On December 16, 1916, the auditor for that department decided that defendant should have been paid from October 21, 1912, to September 30, 1915, at the rate of $3,120 per annum, that being the pay of a lieutenant in the Navy under the new pay schedule as set forth in the Act May 13, 1908 (35 Stat. 127, 128), and on January 27, 1917, the Comptroller directed defendant to deposit the difference of $220 in the Treasury.

The Navy Department protested to the Attorney General against the "government attempting to recover from an officer or other person in the naval service moneys paid him years ago, in conformity with the law as then construed, and notwithstanding the fact that the accounts evidencing such payments were adjusted and settled by the Auditor for the Navy Department with full knowledge of the facts."

The Navy Department further advised the defendant that it "would take no action tending to the collection of the amount" in dispute (letter of August 7, 1917), and that it "would welcome the opportunity to have the question in this case litigated and a final decision obtained as to the right of the Government to recover overpayments made under the circumstances of this case" (letter of March 20, 1920).

It further appears that Commander Yates filed claim with the Auditor for $19.12

for additional pay from October 1 to December 26, 1915, claiming that the paymaster was in error in cutting his salary from $3,200 a year to $3,120. This claim was disallowed by the Auditor, and the Auditor held that defendant had been overpaid for the period from October 21, 1912, to September 30, 1915, in the amount of $220; and this suit was instituted by the United States to recover that amount from defendant, as money illegally paid to him.

The questions of law presented are: (1) The correctness of the Auditor's decision in reversing his former ruling and holding that defendant, Capt. Yates, was entitled only to the pay fixed by the scale in the new (1908) law ($3,120), and not to the scale fixed by the old law ($3,200); and (2) if the Auditor was correct in his later ruling, whether the government has the right to recover back the overpayments made and passed by the Auditor under his former ruling.

The decision of the first question, as I view it, turns upon the construction of the savings provision contained in the act of 1908, which act fixed new rates of pay for various classes of naval officers. 35 Stat. p. 128. The savings provision in question reads as follows: "Nothing herein shall be construed so as *to reduce* the pay or allowances now authorized by law for any commissioned, warrant or appointed officer or any enlisted man of the active or retired lists of the Navy, and all laws inconsistent with this provision are hereby repealed." (Italics supplied.)

In his decision of the case, the Comptroller treated this clause as saving only the right to the pay actually being received by the officer at the time the 1908 act went into effect, and not as giving such officer the right to the old rates of pay in grades to which such officer was promoted *after* the act of 1908 became a law.

Briefly, the government contends that the savings clause protected an officer *against a reduction of the pay he was receiving at the time the act of 1908 went into effect*, but did not entitle such officer to the old rate of pay in any higher grade to which he might be promoted after the 1908 act became a law. For illustration, if defendant was a lieutenant at the time the act of 1908 went into effect, although the act undertook to reduce the pay of the office of lieutenant as an office, it nevertheless protected the officers who were at that time lieutenants so long as they remained in that office; but, if a lieutenant was, after the act of 1908

became a law, promoted to a higher grade, upon such promotion he became entitled to receive, not the rate of pay prevailing in such higher grade prior to the act of 1908, but the new rate of pay created by the act of 1908. It was a savings in favor of certain officers, not a savings in favor of an office or offices.

To sustain the contention of defendant would be to hold that the act of 1908 was intended to apply the reduced rates of pay to such persons only as might thereafter become officers in the Navy, and did not affect the pay of any officer in the office which he was then holding or to which he might thereafter at any time be promoted. With that contention this court is unable to agree, and its conclusion is that the Comptroller's construction of the savings clause in the act of 1908 is the correct construction. The savings was intended to prevent an actual reduction in the pay of officers and men then in office or in the service, and thereby to prevent the hardship that would have resulted from such reduction, and it did not apply to the successors in office of such officers, for the reason that to have reduced an officer's pay after he and his family had adjusted their living expenses to a certain rate of pay would have worked a hardship, but it is manifest that no such hardship would have resulted by reducing the rate of pay in offices to which he might thereafter from time to time be promoted.

Has the government the right to recover back from defendant the overpayments in question? This question also must be answered in the affirmative. While such ruling may and probably will work a hardship on defendant, the court is without authority or right to base a judgment in favor of defendant upon that ground alone. Were this a mistake made by a representative of a private corporation, on the showing here, the court would have little hesitation in holding that the private corporation could not repudiate the act of its representative in affirming the overpayments. Furthermore, if this were a case where the head of a department or bureau of the government had been authorized to determine the pay which the officer should receive, and such officer, through an honest error or errors, had been overpaid and the accounts settled and approved by the auditor of such department or bureau, the court would be very reluctant to disturb the settlement, or, in any event, to compel the person who in good faith had received such overpayments to repay them where to do so would work a hardship.

370

But this case is entirely different. The provisions of the act of 1908, when defendant was promoted to a higher grade, absolutely fixed his rate of pay. That act constituted the authority and the sole authority of any paymaster to pay defendant anything. No representative of the government had any authority whatever to alter that rate either by increasing or decreasing it. Congress, and Congress alone, could do that. It therefore follows that the overpayments were made contrary to law, although undoubtedly made and received in absolute good faith under an honest misconstruction of the law.

To uphold defendant's contention that the alleged settlement should not be disturbed would no doubt operate to relieve from a hardship in this case and possibly others, but precedents of that character could and probably would, in the long run, tend to encourage carelessness and indifference in important governmental matters where it is to the public interest that the highest degree of exactness and thoroughness reasonably attainable should be observed, and where there should be no invitation, express or implied, to make unauthorized payments and allowances.

While numerous authorities have been cited on behalf of the government and defendant in their respective briefs, it seems to me that the language in Wisconsin C. R. Co. v. U. S., 164 U. S. 190, at page 210, 17 S. Ct. 45, 51, 41 L. Ed. 399, fully applies to, and disposes of, the decision of the second question. The following is quoted from the opinion by Chief Justice Fuller in that case: "As a general rule, and on grounds of public policy, the government cannot be bound by the action of its officers, who must be held to the performance of their duties within the strict limits of their legal authority, where, by misconstruction of the law under which they have assumed to act, unauthorized payments are made. Whiteside v. United States, 93 U. S. 247 [23 L. Ed. 882]; Hawkins v. United States, 96 U. S. 689 [24 L. Ed. 607]; and cases before cited. The question is not presented as between the government and its officer, or between the officer and the recipient of such payments, but as between the government and the recipient, and is then a question whether the latter can be allowed to retain the fruits of action not authorized by law, resulting from an erroneous conclusion by the agent of the government as to the legal effect of the particular statutory law under or in reference to which he is proceeding."

Reference is also made to U. S. v. Burchard, 125 U. S. 176, at page 180, 8 S. Ct. 832, 834, 31 L. Ed. 662, opinion by Chief Justice Waite, where it was said with reference to overpayments made to an officer of the Navy: "His pay was fixed by law, and the disbursing officers of the department had no authority to allow him any more. If they did, it was in violation of the law; and he has no right to keep what he thus obtained."

While the Supreme Court in the Burchard Case declined to say whether the government *in any case* could be precluded from claiming money which had been paid by its disbursing and accounting officers under mistake of law, I think the language of the court in both the Burchard and the Wisconsin C. R. Co. Cases is such as to leave no reasonable doubt that in a case such as we have here, where the pay to which the officer was entitled was absolutely fixed by law, the passing and approval of the disbursing officer's account by the auditor cannot be held to preclude the government from recovering back the overpayments.

Judgment in favor of the United States against defendant for the sum of $220, the aggregate of the overpayments in question, together with interest thereon, will be entered.