Michael Desmond JACKSON, Tonya
Lynn Jackson Woodling, Rickey Dene
Jackson, Mildred Jackson, and D & R
Motors, Inc., Appellants,

v.

FARMERS STATE BANK, Appellee.

No. 4–284 A 55.[1]

Court of Appeals of Indiana,
First District.

Aug. 5, 1985.

Rehearing Denied Sept. 18, 1985.

---

**1.** This case was diverted to the First District
from the Fourth District by order of the Chief Judge.

Paul E. Becher, Barnes & Thornburg, Indianapolis, John Johnston, Johnston, Lehman & Guenin, Wabash, Ind., for appellants.

Richard K. Helm, Rockhill, Kennedy, Pinnick, Bent & Pequignot, Warsaw, for appellee.

RATLIFF, Presiding Judge.

### STATEMENT OF THE CASE

This appeal is a consolidation of two separate cases. Desmond and Mildred Jackson, (the Jacksons) and D & M Motors, Inc., (D & M) suffered judgments of $85,592.28 and $39,968.09 respectively in favor of Farmers State Bank (FSB).[2] In subsequent proceedings supplemental instituted by FSB to collect this judgment, the court set aside certain conveyances made by the Jacksons to Michael and Rickey Jackson and Tonya Jackson Woodling (garnishee-defendants). We affirm.

### FACTS

The issues in this case all arise out of a dispute between the Jacksons and FSB. The Jacksons owned and operated a used car dealership incorporated as D & M Motors. In 1970, the Jacksons signed an agreement with FSB guaranteeing all of D & M's indebtedness to FSB. D & M's indebtedness was in the form of various financing plans such as an open note, a floor plan program, and the assignment of retail installment contracts.

In 1978 and 1979 disputes arose between FSB and D & M concerning the installment contract method of financing. Over the years the parties had agreed through a course of conduct as to the particulars of this method of financing. When a purchaser bought a car from D & M it would be financed by an installment loan contract which gave D & M a security interest in the car in exchange for monthly payments of the stated amount including principal and interest. The contract would then be

---

**2.** On December 15, 1983, the court amended its previous judgment increasing the Jacksons liability to $132,097.35 and increasing D & M's liability to $106,086.31.

assigned by D & M to FSB for value. It was FSB's policy, however, that it would not accept the contract unless D & M assigned it with recourse. This meant that in the event that a purchaser defaulted on his obligation, FSB could obtain payment from D & M Motors by presenting it with the contract. This course of conduct was observed by the parties and whenever a purchaser fell behind in payments, Mr. Jackson would pay-off the contract to FSB. By this arrangement it was D & M's obligation to pursue the purchaser for payment. The arrangement worked until 1979 when D & M began having financial trouble. FSB presented Mr. Jackson with several delinquent contracts which for a number of reasons he refused to pay. By the end of 1979, some short term notes given by D & M fell due and payment was not forthcoming.

In 1980 FSB brought an action against D & M and the Jacksons to collect the indebtedness. FSB filed a motion for summary judgment with an affidavit explaining each note and installment contract due including copies of each note and contract. The Jacksons and D & M responded by pointing to certain facts which they argued constituted genuine issues of material fact. Specifically, they argued payment of some overdue notes was tendered and refused raising an issue of fact as to the date from which interest should accrue. Regarding the installment contracts, D & M and the Jacksons stated that some contracts were actually without recourse and that FSB otherwise impaired the collateral securing some contracts. The trial judge agreed that the questions raised were issues of material fact to be litigated as to D & M's liability but found no issue remaining as to the Jacksons' liability on the indebtedness. The judge entered partial summary judgment against the Jacksons in July 1981 and amended this judgment on January 13, 1982. This judgment was again amended on December 7, 1982. The issues reserved were litigated at a trial held on June 7 and 8, 1983. On September 1, 1983, the court entered findings of fact and conclusions of law adverse to the Jacksons and D & M on all factual issues and corrected these findings on September 6. The Jacksons and D & M now appeal all adverse rulings concerning the merits of their liability to FSB.

The other case involves FSB's institution of proceedings supplemental to execution and complaint to set aside certain conveyances against the Jacksons. FSB claimed the Jacksons made transfers, beginning September 28, 1979, to frustrate the bank in its attempt to collect from the Jacksons. On this date, the Jacksons conveyed 60% of their entirety interest in four pieces of real estate to the garnishee-defendants. The conveyances of three of these properties were set aside; namely, the Jacksons' residence, the car lot, and the Atwood Duplex. The court found the Jacksons' transfers represented a course of conduct to intentionally defraud, hinder, and delay FSB in collecting the debts. Included in this course of conduct was the transfer of numerous other assets. The court found the transfer of the three properties on September 28, 1979 rendered the Jacksons insolvent and that this state of insolvency continued up to the time of FSB's attempt to execute on its judgment. Therefore, the transfers of the residence, car lot, and Atwood duplex to the garnishee-defendants were found to be fraudulent conveyances and void as to FSB. The garnishee-defendants now appeal this judgment.

## ISSUES

Restated the issues as to the merits of this action are as follows:

1. Are the Jacksons liable to FSB on delinquent installment contracts assigned to FSB?

(A) Does lack of notice to the Jacksons' of the principal's default discharge their liability?

(B) Did FSB impair the collateral resulting in the Jacksons' discharge as a surety?

(C) Did FSB alter some of the contracts thereby discharging the Jacksons liability as a surety?

2. Did the trial court err by denying the Jacksons motion for change of venue from judge?

3. Did the trial court err by finding Mr. Jackson in contempt for failure to comply with a court order?

4. Did the trial court err by entering partial summary judgment against the Jacksons?

The issues raised on the fraudulent conveyance claim are restated as follows:

5. Did the trial court err by setting aside the conveyance of the Jacksons' residence, car lot, and Atwood Duplex as in fraud of creditors?

6. Did the trial court err in exercising equitable jurisdiction before requiring FSB to first resort to available legal remedies?

7. Did the garnishee-defendants have notice that their interests in the Atwood Duplex and the car lot were subject to being set aside by the trial court?

8. Are the court's findings so vague as to render them void?

## DISCUSSION AND DECISION

*Issue One*

The Jacksons first challenge the trial court's findings regarding their liability on the installment contracts. They argue that as guarantors, before being liable to pay-off an installment contract they were entitled to proof (1) that notice of the purchasers' default was sent to them; (2) that the purchasers were insolvent; (3) that FSB had made a demand for payment from the purchasers. This argument reveals a misunderstanding of the various relationships present in this case.

The facts as found by the trial court and supported by sufficient evidence reveal that D & M sold used cars to purchasers on installment loan contracts. FSB agreed to accept the assignment of these contracts for value. This assignment from D & M to FSB was always to be with recourse. FSB

and D & M agreed by a course of conduct that whenever a purchaser defaulted on a payment, D & M would pay-off the entire contract. This agreement was not only established by the course of conduct but was also the definition of the term "with recourse" appearing on each installment contract assigned. Furthermore, all of D & M's indebtedness to the bank was unconditionally guaranteed by Desmond and Mildred Jackson after 1970.

It is important to note that the Jacksons were not liable on the installment contracts based on the guaranty agreement. By this agreement, the Jacksons promised to pay D & M's debts to FSB. We must, therefore, first consider the basis for D & M's liability to FSB.

FSB, as a holder, could require D & M to pay for a contract on which the purchaser defaulted because D & M was a recourse endorser of the instrument. Indiana Code section 26–1–3–414(1). Furthermore, any notice of dishonor due D & M pursuant to Indiana Code section 26–1–3–501(1)(a) was explicitly waived by D & M on each installment contract. Such a waiver is entirely proper under Indiana Code section 26–1–3–511(2)(a). D & M also expressly waived the right to require that FSB avail itself of any other remedy before exercising its right of recourse against D & M.[3] Therefore, D & M was immediately liable to FSB on the assigned installment contracts whenever a purchaser defaulted. In light of the waiver provision the only conceivable question of fact was whether the purchasers were actually in default. The Jacksons do not challenge whether the contracts were overdue, but even if they did, the evidence clearly shows that as of the time of the trial in 1983, all pertinent contracts were overdue.

With D & M's liability established, we now consider the effect of the Jacksons' guaranty agreement with FSB. The Jacksons' argument is that their liability under

---

**3.** The waiver provision states: "... notice of non-payment or non-performance, and prosecution of any other remedies available to Assignee are hereby waived by Seller[, D & M Motors] ..."

the guaranty agreement is discharged because no notice of their principal's default was given. Under certain circumstances notice of a principal's default must be given to bind a surety. *The Furst & Bradley Manufacturing Co. v. Black* (1887), 111 Ind. 308, 313–14, 12 N.E. 504, 507–08; *Bowyer v. Clark Equipment Co.* (1976), 171 Ind.App. 431, 436, 357 N.E.2d 290, 293, *trans. denied.* Assuming, *arguendo,* the guaranty agreement was the type which required notice, the Jacksons are still not entitled to discharge.

■ The Jacksons improperly label the purchasers of the cars as their principals. However, the guaranty insured payment of D & M's debts, not those of third parties. Any notice the Jacksons were entitled to would be information regarding D & M's indebtedness. It appears obvious that D & M's debts to FSB were well known to the Jacksons regardless of notice. The findings show D & M was wholly owned by the Jacksons and operated by Mr. Jackson. Clearly Mr. and Mrs. Jackson, as D & M's alter ego, would be aware of D & M's liabilities at the moment the debts came due. We believe the Jacksons are unable to argue they lacked notice of D & M's default.

Second, the guaranty agreement expressly waived the requirement of notice to the sureties. In *Bowyer,* the court held that a provision in a guaranty waiving presentment, protest, or notice of dishonor, on any instrument was insufficient to waive a surety's right to notice of the principal's default of any liability. *Bowyer,* at 438–39, 357 N.E.2d at 294. Here the provision expressly waived "... notice, to any and everyone, whether or not the Debtor or the Guarantors hereunder, or others, of dishonor or of default or of non-payment, or of the existence and creation of any and all

such indebtedness, obligations, and liabilities..." Record at 716. This language clearly waives notice of D & M's liability and default on its obligations even under the *Bowyer* court's exacting scrutiny of waiver language. Therefore, lack of notice is not grounds for the Jacksons' discharge.

The Jacksons next argue that its liability on the guaranty should be discharged because FSB impaired the collateral securing the installment contracts.[4] Specifically, they contend FSB was responsible for rendering certain titles unmarketable which impaired the value of the automobiles. This, according to the Jacksons, significantly reduced any opportunity for them to obtain reimbursement for the contracts they paid-off. Indiana Code section 26–1–3–606(1)(b); *cf. White v. Household Finance Corp.* (1973), 158 Ind.App. 394, 302 N.E.2d 828 (surety discharged if lienholder releases security or otherwise impairs collateral).

■ The evidence reveals any impairment of the collateral was not due to acts of FSB. The Jacksons argue the titles represented collateral on all the contracts. One title to a vehicle purchased by one Trine was released by FSB to Trine. However, Desmond Jackson consented to this release. There was also a contract involving one Daniels, in which the title was released to an insurance company after the vehicle was totally destroyed. Jackson also consented to this release when FSB informed him it had received the insurance proceeds for the vehicle. Finally, title to a vehicle purchased by one Denz was released to Denz so that it would reflect a change in her name due to marriage. FSB was not certain the title was ever sent to the Bureau of Motor Vehicles. However, the vehicle itself was turned over to FSB

---

4. Actually, the Jacksons' argument is that they should be discharged as a surety under Indiana Code section 26–1–3–415(5). To this extent the Jacksons are mistaken because, as pointed out earlier, the Jacksons' did not guarantee the payment of the purchasers but of D & M. The relationship between the Jacksons' as surety and D & M as principal means that whenever the Jacksons were obligated pursuant to the guaranty they were subrogated to the rights of D & M. Indiana Code section 26–1–9–504(5). Therefore, on contracts paid off by the Jacksons, they were subrogated to the rights of a recourse endorser. However, our ultimate analysis is the same since both a surety and endorser may be discharged by a holder's impairment of collateral under Indiana Code section 26–1–3–606. *White,* at 400, 302 N.E.2d at 833 n. 4.

which in turn gave the car to Desmond Jackson. Ultimately, Jackson returned the vehicle to the former Mrs. Denz and the lien remained on the car. The Uniform Commercial Code prohibits Jackson from contending he was injured by impairment of security when he consented to release of the collateral in each instance. Indiana Code section 26–1–3–606(1).

■ The Jacksons next point to testimony by John Williams concerning title to 33 vehicles repossessed by the Jacksons. Mr. Williams was an official of FSB and worked closely with the Jacksons concerning the installment contract assignments. Mr. Williams admitted that some titles to the 33 vehicles were of questionable marketability. He testified this was due to a failure to have the owners sign-off the title at the time of repossession. We do not believe this necessarily impaired the collateral. There is no evidence that Desmond Jackson ever had trouble reselling a repossessed car due to lack of a marketable title. Furthermore, we see nothing to prevent Jackson from obtaining a salvage title on cars he repossessed pursuant to Indiana Code section 9–1–3.6–2(b). We conclude FSB did not impair the collateral and therefore, the Jacksons' liability is not discharged.

■ The Jacksons next contend that FSB altered certain installment contracts, originally assigned without recourse against D & M, to read with recourse. We note that in discussing the previous issues we have been very lenient in accepting certain questions as preserved on appeal. In searching the record we have uncovered four documents entitled "Motion to Correct Error." Record at 1, 425, 575, 329. The issue regarding whether certain contracts were altered by FSB, however, is not even remotely related to an assignment of error in any of these documents. Any error in this regard has not been properly preserved under our trial rules and is therefore, waived. Indiana Rules of Procedure, Trial Rule 59.

*Issue Two*

■ On June 3, 1983, the Jacksons moved for a change of venue from judge which was denied. They now raise this issue on appeal. The motion for a change of venue from judge is, in this case, controlled by Indiana Rules of Procedure, Trial Rule 76(8). This rule provides that a judge's ruling on a T.R. 76(8) motion may be reviewed only for an abuse of discretion. *Briggs v. Clinton County Bank & Trust* (1983), Ind.App., 452 N.E.2d 989, 1008, *trans. denied.* Thanks to the appellee's citation to specific pages in the record, we need not search the record to find the pertinent facts underlying the motion. The only grounds set out in support of the Jacksons' motion is an adverse ruling on a motion for a continuance. "A ruling against a party does not show a disqualifying bias." *Kujaca v. Kujaca* (1973), 159 Ind.App. 6, 304 N.E.2d 870. We presume a judge is unbiased and unprejudiced. *Hunter v. Milhous* (1973), 159 Ind.App. 105, 305 N.E.2d 448. Generally, only a personal prejudice or bias for or against a party will disqualify a judge. *Briggs,* 452 N.E.2d at 1007. Our review of the record has not revealed the unreasonable, arbitrary or unconscionable attitude of the judge our cases require to justify his disqualification. *Id.* at 1008; *see also Bielat v. Folta* (1967), 141 Ind.App. 446, 228 N.E.2d 888, *trans. denied.* Accordingly, we find no abuse of discretion.

*Issue Three*

Pursuant to the August 26, 1981, partial summary judgment entered against the Jacksons, the court, in execution proceedings, ordered the Jacksons to pay into the court certain sums of money he possessed or would soon possess by virtue of assets sold by the Jacksons on contract. This order was made directly to the Jacksons, in open court, on January 7, 1982. By August 5, 1983, Jackson had not complied with this order and the trial judge found Mr. Jackson in contempt ordering $7,260 to be paid to the clerk. This has now been done by means of an appeal bond.

The Jacksons challenge the contempt finding arguing that the partial summary judgment was not a final judgment and, therefore, execution thereon was improper. They reason that since execution, which formed the basis for the order, was improper, the court's order was invalid and could be ignored. We need not discuss whether or not the partial summary judgment was a final order upon which execution could issue. It is without question that the trial court had both subject matter and personal jurisdiction at the time it issued the order to the Jacksons. The willful and intentional disobedience of a court order constitutes indirect criminal contempt.[5] *In re Crumpacker* (1982), Ind., 431 N.E.2d 91, 97, *cert. denied* 459 U.S. 803, 103 S.Ct. 25, 74 L.Ed.2d 41; Indiana Code section 34–4–7–3. Contempt powers are inherent in a court's authority to insure and protect the orderly administration of justice. *Johnson v. State* (1981), Ind.App., 426 N.E.2d 104; *Linton v. Linton* (1975), 166 Ind.App. 409, 339 N.E.2d 96, *trans. denied.*

The evidence reveals that the Jacksons were aware of the court's order and it is uncontradicted that they willfully disobeyed it. This is sufficient to support a finding of contempt. *See Bird v. Johnson* (1955), 234 Ind. 555, 130 N.E.2d 29. The Jacksons cannot argue that because the court's order was erroneous it may be disobeyed. Even if the order was indeed erroneous, it must still be obeyed until reversed on appeal. In *Walker v. City of Birmingham* (1967), 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210, the city sought and obtained a temporary injunction in state court prohibiting civil rights leaders from organizing demonstrators to march in the City of Birmingham without a parade permit. The civil rights activists through the media openly disavowed the court order and stated their intentions to disobey the injunction. Demonstrations occurred as planned and many were arrested and subsequently convicted of contempt. It was argued before the Supreme Court that disobedience of the court order was not punishable by contempt because the injunction, and ordinance upon which it was based, were both unconstitutional. After finding that the state court possessed jurisdiction, the Court held that even the unconstitutionality of the order and ordinance would not justify disobedience of a court order. A party's remedy for an erroneous order is appeal and disobedience of the order is contempt. *Id.* at 314, 87 S.Ct. at 1828, 18 L.Ed.2d at 1216. Similarly, the Jacksons cannot be relieved of contempt by arguing that the court's order was erroneous. We therefore affirm the trial court's citation for contempt due to the Jacksons' refusal to comply with the court's order of January 7, 1982.

*Issue Four*

The final question raised by the Jacksons involves issues disposed of by the trial court's entry of partial summary judgment on August 26, 1981. Specifically, the trial court held that no issue of material fact existed concerning the Jacksons' liability on notes and installment contracts while specifically finding issues of fact remaining as to whether D & M was liable to FSB on some of these same notes and installment contracts. The Jacksons contend the court's decision that no issues of fact remained as to their liability was erroneous. We agree that it was inconsistent for the court to find the Jacksons liable as a matter of law while remaining uncertain as to D & M's liability. Due to the guaranty agreement, the Jacksons were liable only if D & M was in fact indebted to FSB. However, any error in this regard was harmless.

In its partial summary judgment order the court specifically reserved certain questions of fact for trial concerning D & M's

---

5. The order disobeyed by the Jacksons was not the judgment itself but rather an order in aid of execution. *Cf. Bahre v. Bahre* (1967), 248 Ind. 656, 230 N.E.2d 411 (judgment is enforced by execution not contempt citation); *but see Linton v. Linton* (1975), 166 Ind.App. 409, 339 N.E.2d 96, *on rehearing trans. denied* (proceedings supplemental and contempt are both viable means for enforcement of judgment); *see also* Indiana Rules of Procedure, Trial Rule 70(A).

indebtedness to FSB. These issues which the Jacksons raised in their Affidavit in Opposition to Plaintiff's Motion for Summary Judgment were precisely the same issues ultimately litigated at the June 8, 1983, trial. After this trial, the court's findings of fact went against D & M on every issue of material fact. These findings also stated that the Jacksons were liable for D & M's debts pursuant to their guaranty agreement. Any error premised on the premature summary judgment against the Jacksons was rendered harmless since all issues of material fact raised by the Jacksons were properly brought to trial. These issues were decided adversely to D & M establishing its liability to FSB which prompted the trial court to conclude the Jacksons were liable.

The trial court's judgment rendered September 1, 1983, holding the Jacksons and D & M liable on the merits of this case is affirmed.

*Issue Five*

We now turn to the issues concerning FSB's execution to collect its judgment against the Jacksons. These issues mainly concern transfers by the Jacksons to their children, the garnishee-defendants in this action, and whether or not these conveyances may be set aside as fraudulent. The trial court set aside the Jacksons' conveyance of their Atwood duplex and their car lot to the garnishee-defendants. The trial court also set aside the Jacksons' conveyance of 60% of their interest in their residence to the garnishee-defendants creating a joint tenancy in the property.

■ We begin our discussion with an analysis of the law of fraudulent convey-

ances in Indiana. Two statutes passed in the 19th century, which are still in effect, basically state that conveyances made with the intent to hinder, defraud, or delay creditors shall be void as to those creditors so hindered, defrauded or delayed.[6] Furthermore, at common law a conveyance would be set aside if the creditor could show it was made at a time when the debtor was insolvent *and* that at the time of collection the debtor continued to be insolvent. *Nevers v. Hack* (1894), 138 Ind. 260, 261, 37 N.E. 791, 792; *Milburn v. Phillips* (1893), 136 Ind. 680, 34 N.E. 983; *Hogan v. Robinson* (1883), 94 Ind. 138, 145. The obvious rationale for the common law rule was to protect a debtor's conveyances so long as he retained sufficient assets to satisfy his liabilities. *Pennington v. Flock* (1883), 93 Ind. 378, 381. Therefore, the common law and statutory law combined to produce a three part test to determine whether a conveyance could be set aside as fraudulent. A creditor must show: (1) that the transaction was intended to defraud, delay or hinder creditors; (2) that the transaction occurred when the debtor was already insolvent or rendered him insolvent; (3) and that at the time the creditor attempted to execute on the debt the debtor was insolvent. *Deming Hotel Co. v. Sisson* (1940), 216 Ind. 587, 593–94, 24 N.E.2d 912, 915.[7]

■ The garnishee-defendants' main contention is that FSB failed to prove the Jacksons', as judgment-debtors, were ever insolvent. This challenge is based on the trial court's finding number 6 which sets out the Jacksons' liabilities as of Septem-

---

**6.** Indiana Code section 34–1–45–1. Indiana Code section 32–2–1–14.

**7.** Under the cases described, the test for insolvency is simply whether a debtor's assets outweigh his liabilities or the so-called "balance sheet test." However, the concept of insolvency has recently undergone a change. In *Cellar Lumber Co. v. Holley* (1967), 9 Ohio App.2d 288, 224 N.E.2d 360, the court distinguished between what it called legal insolvency and equitable insolvency. Legal insolvency occurs when a balance sheet indicates more liabilities than assets. Equitable insolvency occurs when the debtor is unable to pay his debts as they come due in the ordinary course of business. Both the Bankruptcy Reform Act of 1978 and recently drafted Uniform Fraudulent Transfer Act accept both tests in establishing insolvency. 11 U.S.C. § 303(h)(1); 7A U.L.A. Uniform Fraudulent Transfer Act § 2(b) (1985 Supp.); *see also* Indiana Code section 26–1–1–201(23). While the court's findings clearly indicate that its decision was based on legal insolvency, the record clearly establishes the Jacksons were equitably insolvent.

ber 28, 1979, the date the contested transfers occurred.

"6. That as of September 28, 1979, the defendants, Desmond Jackson and Mildred Jackson, were indebted to Plaintiff as follows:

| | | |
|---|---|---|
| (a) | Promissory notes | $17,015.00 |
| (b) | Floor Plan notes | 38,800.00 |
| (c) | 4 contracts charged off by Plaintiff | 4,171.00 |
| (d) | contractual recourse of retail installment contracts | 145,756.00 |
| | TOTAL | $205,742.00" |

Record at 364. Our review of this and the other findings is restricted to whether they are clearly erroneous. Indiana Rules of Procedure, Trial Rule 52(A); *National Fleet Supply Inc. v. Fairchild* (1983), Ind. App., 450 N.E.2d 1015, 1017. The findings are sufficient if they are supported by probative evidence. *Kimbrell v. City of Lafayette* (1983), Ind.App., 454 N.E.2d 73. We neither weigh evidence nor judge credibility of witnesses. *Peoples Trust & Savings Bank v. Humphrey* (1983), Ind.App., 451 N.E.2d 1104. However, even if we are persuaded certain findings are clearly erroneous, we need not reverse if the remaining valid findings and conclusions support the judgment. *Miller v. Ortman* (1956), 235 Ind. 641, 136 N.E.2d 17; *In re Marriage of Miles* (1977), 173 Ind.App. 5, 362 N.E.2d 171, *trans. denied.*

■ The garnishee-defendants specifically attack the trial court's calculation of the Jacksons' liabilities on the assigned installment contracts. The trial court found the Jacksons owed $145,756 pursuant to their guaranty of D & M's indebtedness. As discussed earlier, D & M was liable as a recourse endorser on every installment contract as soon as the purchasers defaulted on payments to FSB. This then also made the Jacksons liable pursuant to their guaranty agreement. It was therefore, proper to include the amount of overdue installment contracts as liabilities of the Jacksons. However, the uncontradicted evidence establishes that the amount of past due contracts did not equal $145,756. FBS's own exhibit establishes that as of September 1979, $29,214 worth of the total $145,756 in contracts outstanding were in

fact current. Record at 833, Plaintiff's exhibit 35. Because contracts totalling $29,214 were not overdue in September 1979, this amount cannot be included in the September 1979 calculation of the Jacksons' liabilities. Consequently, the total liabilities listed in finding 6 must, as a matter of law, be reduced by $29,214. Such a reduction results in total liabilities of $176,528 ($205,742 less $29,214) which, when compared to the calculation of the total of the Jacksons' assets found by the court to be $186,184 as of September 1979, requires the conclusion that the Jacksons were technically solvent as of this date. Finding 6 is therefore clearly erroneous and the conclusion concerning the Jacksons insolvency in September 1979, is unsupported.

■ We also agree with the garnishee-defendants that the trial court improperly calculated the Jacksons' assets. The trial court failed to include the value of any right of action the Jacksons had against the defaulting purchaser. As D & M's guarantor, the Jacksons, were subrogated to D & M's position everytime they would pay-off the recourse liability. Indiana Code section 26–1–9–504(5). Consequently, while the Jacksons were liable to pay off delinquent contracts, they simultaneously obtained the rights of a secured party to take possession of the collateral from the defaulting purchaser and to sue the purchaser for any deficiency. Indiana Code sections 26–1–9–503 and 26–1–9–504(2). When determining insolvency, these rights of subrogation must necessarily be included as assets. *In re Ollage Construction Equipment Corp.* (2d Cir.1978), 578 F.2d 904, 908; *Schwartz v. Commissioner of Internal Revenue* (8th Cir.1977), 560 F.2d 311, 317; *Syracuse Engineering Co. v. Haight* (2d Cir.1938), 97 F.2d 573, 576; *Updike v. Oakland Motor Car Co.* (2d Cir. 1931), 53 F.2d 369, 371; *cf. Allegaert v. Chemical Bank* (E.D.N.Y.1976), 418 F.Supp. 690 (contingent claims of debtor not considered when determining solvency unless such claims can be realized and applied to satisfy debts within a reasonable time). The evidence in the record reveals

that the total value of the cars which represented the collateral was $111,640 in September 1979. This figure is a fair valuation of the Jacksons' subrogation rights and without its addition as an asset, the trial court could not properly determine the Jacksons' solvency. The findings that Desmond and Mildred Jackson were insolvent, as measured by the so-called "balance sheet test" were clearly erroneous.

From this the garnishee-defendants argue we must reverse. Since the court's findings relating to insolvency are clearly erroneous, they contend we must reverse the trial court's conclusion that the conveyances of the three parcels in 1979 were fraudulent.

 Although proof of insolvency is a very important factor in a fraudulent conveyance action, we believe, for a number of reasons, that such proof should not be an indispensable element. The ultimate inquiry is whether the transfers were made to intentionally defraud, hinder, or delay creditors. Indiana Code sections 34–1–45–1 and 32–2–1–14. Strong evidence of this intent is that the transfers rendered the debtor insolvent. However, absence of insolvency should not preclude proof of fraudulent conveyances by other well accepted indicia of fraud. The supreme court's opinion in *Milburn*, 136 Ind. 680, 34 N.E. 983, although treating insolvency of the debtor as essential, stated that proof of fraudulent intent may come in the form of badges of fraud. Insolvency, according to that court, was included as one of the strongest badges of fraud. In the recent case of *Arnold v. Dirrim* (1979), Ind.App., 398 N.E.2d 442, the court affirmed the setting aside of certain conveyances by a debtor as in fraud of creditors. Although the court found that the debtors were insolvent, it did not treat this as an indispensable requirement. Moreover, the court discussed the debtor's insolvency as a factor to be considered in determining whether fraudulent intent existed. "Among the most common indicia of fraud is the transfer of property by a debtor during the pendency of a suit against him, especially where the transfer renders the debtor insolvent *or greatly reduces his estate."* *Arnold,* at 446–47 (emphasis supplied). In light of *Milburn* and *Arnold* we believe the trend in Indiana's fraudulent conveyance law is away from requiring a showing of the debtor's insolvency and toward making evidence of insolvency merely a strong indication of fraudulent intent.

Furthermore, making insolvency an indispensable element in an action to set aside a fraudulent conveyance is problematic. One problem is that requiring a creditor to isolate the particular time when a particular transaction renders a debtor insolvent can be an impossible burden. This case exemplifies the problem of proving insolvency. The Jacksons' liabilities were constantly changing as contract purchasers either defaulted on their obligation or brought their individual payments up to date. The overall liability of the Jacksons to FSB changed monthly.

Another problem is that the measure of a debtor's assets may have little relation to the value of assets which are actually available for satisfaction of the debt. Between September 1979, and June 1983, the Jacksons disposed of a large number of assets. Still, on a balance sheet, it appears they retained sufficient assets to pay their debts. However, an examination of the Jacksons' remaining assets leaves little doubt that the assets were of very questionable actual value. The court found the Jacksons retained $107,214 worth of assets. The largest single amount was D & M's accounts receivable. However, the trial court found the stated figure was probably not very reliable because calculation was so difficult. The Jacksons' interest in their residence and the Palestine Lake cottage had been reconveyed with them retaining only partial interests in each parcel making execution against either difficult and of questionable value toward satisfaction of FSB's judgment. Earlier we found that the defaulting purchasers' cars should be included as assets of the Jacksons. These cars were worth $111,640 in 1979. However, it is now six years later and execution

on this collateral would do little toward satisfying FSB's judgment in light of the fact that the collateral is used cars. Therefore, calculation of the debtor's assets on a balance sheet may not establish actual, reliable values for purposes of execution. This enables a debtor to engage in a course of conduct, systematically disposing of his assets with the intention of frustrating creditors' efforts to satisfy their debts while retaining assets of questionable actual value so as to remain "balance sheet solvent."

Our decision to reject insolvency as an indispensable element brings Indiana law into line with the majority of other jurisdictions. The more modern rule is that equity will set aside a conveyance as long as the fraudulent intent of the debtor can be shown regardless of the debtor's solvency at any given time. 37 Am.Jur.2d *Fraudulent Conveyances* § 7 (1968). The Uniform Fraudulent Conveyance Act, adopted by a majority of the states, makes proof of insolvency merely one factor which is strong evidence of fraud. *Compare* 7A U.L.A. § 4 p. 205 *with* § 7 p. 242. We now adopt this analysis as the rule in Indiana. As stated earlier, the necessity of proving insolvency was a creature of common law. Nothing in either Indiana Code sections 32–2–1–14 or 34–1–45–1 makes insolvency an element in a fraudulent conveyance action. Based on the foregoing reasons we hold that failure of FSB to show the insolvency of the Jacksons, at any particular time, is not fatal to its action to set aside certain conveyances as fraudulent if, despite the absence of insolvency, we are still persuaded the transfers were accompanied by fraudulent intent.

 In determining the Jacksons' intent we look to whether certain badges or indicia of fraud were present when the questioned conveyances occurred. *Milburn*, 136 Ind. 680, 34 N.E. 983, 36 N.E. 360; *Arnold*, 398 N.E.2d 442. A badge of fraud is present when the particular transfers greatly reduce a debtor's estate when suit is pending or expected. *Arnold*, at 447. Evidence of a hurried series of contemporaneous transfers also indicates fraud. *Id.* The retention by the transferor of possession or interest in land conveyed is a badge of fraud. *Milburn.* One may not be the beneficial owner of property and have it exempt from his debts. *Arnold*, at 447. Also, a transfer without consideration is a badge of fraud. *Id.* Finally, transfers to close family members is an indicator of fraud. *Id.* While standing alone a single badge of fraud will not be sufficient to show improper intent, the concurrence of several raises a strong inference of fraudulent intent which would allow us to affirm the lower court's findings. *Kane v. Drake* (1866), 27 Ind. 29; *Arnold*, 398 N.E.2d at 446.

 The record before us is replete with badges of fraud arising out of circumstances surrounding the questioned conveyances. The conveyances at issue occurred on September 28, 1979. By this time D & M was experiencing serious financial difficulties and the Jacksons, as D & M's guarantor, were exposed to liability based on D & M's heavy indebtedness to FSB at that time. Furthermore, disputes between Desmond Jackson and FSB had arisen concerning the assigned installment contracts. While suit was not pending, the evidence supports an inference that litigation was certainly expected by the Jacksons. Also, the trial court's findings show that as a result of a series of transfers made on September 28, 1979, the Jacksons greatly reduced their estate. From September 29, 1979, to June 1980, the Jacksons had disposed of $133,000 worth of assets. The conveyances made were designed so that the residence, the car lot, and Atwood duplex could still be enjoyed by the Jacksons despite the transfer. They retained a 40% interest in each of the properties and continued to act as if they retained full ownership. The Jacksons continued to take depreciation deductions on the entire car lot and Atwood duplex. They continued to live in their residence and remained listed as owners on insurance policies covering the residence. All three conveyances to the Jacksons' children were made without con-

sideration. The Jacksons argue in their brief that they transferred the property as compensation to their children for work they had done at the car lot. The trial court however, expressly dismissed this contention because, although each child received equal interests, the evidence showed they had not done equal work. Also, the children who worked the most hours at the car lot received salaries from D & M. We will not reweigh this evidence and thus agree with the trial court that no consideration was received by the Jacksons. Finally, the fact that the challenged transactions consisted of transfers to family members establishes another badge of fraud. Considering the numerous badges of fraud, we believe the trial court's finding that the conveyances of the residence, car lot, and Atwood duplex were intended to frustrate FSB as a creditor is supported by the evidence in the record.

We also note evidence of other transfers supports a finding of fraudulent intent. On September 28, 1979, the Jacksons owned the following property:

| "Asset | | Value |
|---|---|---|
| a. | Car Lot | $ 25,000.00 |
| b. | Residence, Rural Route Five, Warsaw | 25,000.00 |
| c. | Atwood house (sold on contract to Hull) | 12,500.00 |
| d. | Cottage on Palestine Lake | 15,500.00 |
| e. | Atwood Duplex | 25,000.00 |
| f. | 16 lots on Palestine Lake | 4,000.00 |
| g. | One lot in Flagstone Addition | 2,000.00 |
| h. | 20 acres in Ivington, Kentucky | 1,000.00 |
| i. | Motor home | 10,000.00 |
| j. | Cash in bank accounts at Lake City Bank | 14,504.29 |
| k. | Accounts at Farmers State Bank | 6,116.07 |
| l. | Farm Tractor | 1,200.00 |
| m. | Accounts receivable | 41,790.00 |
| n. | Inventories | 28,624.00 |
| o. | Silver bullion | 10,250.00 |
| p. | 17–foot Duo inboard boat | 3,500.00 |
| q. | 19–foot pontoon boat | 1,500.00 |
| r. | Furniture and appliances | 4,500.00 |
| s. | House in Atwood | 8,500.00 |
| | TOTAL | $240,484.36" |

Record at 363–64. However, by June 1983, after judgment had been entered against them the Jacksons had the following assets:

| "Asset | Value |
|---|---|
| 40% shown on title to residence Rural Route 5, Warsaw (at $45,000.00 appraisal) | $ 18,000.00 |
| Palestine Lake cottage 40% (at $20,000.00 appraisal) | 8,000.00 |
| Lots on Palestine Lake | 4,000.00 |
| Motor home sold on contract, approximate balance due | 6,800.00 |
| Accounts receivable | 41,790.00 |
| Inventory | 21,624.00 |
| TOTAL | $107,214.00" |

Record at 363–64. Furthermore, despite the transfer of all this property, the Jacksons had no money in any banking account. It appears obvious that the Jacksons engaged in a course of conduct with the intention of sheltering their valuable assets in fraud of creditors, retaining assets of highly questionable value simply to give the appearance of legal solvency. Therefore, we affirm the trial court's conclusion that the three lots should be made available to FSB to satisfy its judgment.

*Issue Six*

The garnishee-defendants next argue that FSB resorted to a court of equity when it had an adequate remedy at law.

Specifically, the available remedy at law, they argue, is to execute against the Jacksons' available assets including the repossessed used cars. This is simply another way of arguing that FSB was required to show the Jacksons' insolvency before the court would set aside any of the debtors' conveyances. As we already have stated, the assets retained by the Jacksons were of questionable value. The court certainly could have determined that resort to execution on their remaining assets was not adequate. Where there is a full and adequate legal remedy, equity will not assume jurisdiction. *McAfee v. Reynolds* (1891), 130 Ind. 33, 28 N.E. 423. However, a party will not be forced to pursue a legal remedy which is not practicable or efficient with regard to the means of obtaining it. *Michener v. Springfield Engine & Thresher Co.* (1895), 142 Ind. 130, 40 N.E. 679. We believe under the circumstances of this case, the question of the adequacy and efficiency of the legal remedy should be left to the discretion of the trial court. *South Side Motor Coach Corp. v. McFarland* (1934), 207 Ind. 301, 191 N.E. 147. Accordingly, we find no abuse of that discretion and hold the trial court properly assumed equitable jurisdiction in this case.

*Issue Seven*

The garnishee-defendants next argue that they had no notice that the June 1983, trial would litigate any transfers of property other than those made September 28, 1979. The facts underlying this contention involve two transactions which occurred after that date. The September 1979, conveyances transferred only 60% of the three parcels with the Jacksons retaining the other 40% interests. However, their remaining 40% interest in the car lot and Atwood duplex was subsequently transferred by contract sale to the garnishee-defendants, divesting the Jacksons of all interest in these two properties. The trial court not only set aside the September 1979, transfers but also these two subsequent transfers thereby making all three available to FSB for execution.

Prior to the trial of the fraudulent conveyance action, the court submitted a pretrial order which, pursuant to Indiana Rules of Procedure, Trial Rule 16(J), controlled the issues at trial. The order listed FSB's specific contentions. The order stated that transfers by the Jacksons of three parcels of property were made on September 28, 1979, with, according to FSB, the intent to defraud, delay and hinder their position as a creditor of the Jacksons. A number of bases for this contention were then set out in the order. The one pertinent to our present discussion stated that the transfers were made knowingly by both grantors and grantees for the purpose of putting assets out of the reach of creditors. The garnishee-defendants acknowledge the order but contend the order purports to put in issue only the conveyance of the 60% interest in the car lot, residence, and Atwood duplex which occurred on September 28, 1979. The Jacksons subsequent conveyance by contract of their final 40% interest in the car lot and Atwood duplex to the garnishee-defendants was not mentioned in the order. Consequently, the garnishee-defendants argue they were without notice that these subsequent contract purchases were at issue and that the court could set them aside.

This argument is specious. The validity of the subsequent contract sales of the 40% interest depends on the validity of the 1979 conveyance. If this initial conveyance should be set aside because it was made in fraud of creditors, then certainly any subsequent conveyance in connection with the primary one should also be set aside. The pretrial order made it clear that the issues would center on whether the three parcels should be made available to satisfy the Jacksons' debts to FSB. The garnishee-defendants were on notice that any interest they held by virtue of a conveyance from their parents was in jeopardy and that the court could set it aside.

*Issue Eight*

During proceedings supplemental, FSB brought Clarence Milburn into the proceedings as a garnishee-defendant. While

these suits were pending, the Jacksons sold a mobile home, on contract to Milburn. The court ordered on July 21, 1983, that all further installment payments due the Jacksons should be garnished by FSB. Milburn was to make his remaining payments to FSB. The Jacksons challenge this order as so vague as to be unenforceable since the remaining amount due under the contract was not mentioned in the order.

The Jacksons cite *Picklesimer v. Heltzel* (1962), 133 Ind.App. 83, 180 N.E.2d 132, where the court merely stated that a judgment must specify clearly the relief granted or other determination of the action.[8] The court's order, garnishing further contract payments due the Jacksons, is certainly clear and specific enough. Furthermore, Indiana Rules of Procedure, Trial Rule 70(A) specifically authorizes a court to enter a judgment requiring certain acts such as the decree in question. We, therefore, find no error.

In all respects the judgment of the trial court, entered on September 7, 1983, setting aside certain conveyances is affirmed.

The judgments of the trial court in both of the cases in this consolidated appeal are affirmed.

NEAL and ROBERTSON, JJ., concur.

**8.** Indiana Code section 2–2517 (Burns 1946) which the court relied upon has been repealed.