The **TITLE SEARCH COMPANY, INC.**, Appellant–Plaintiff,

v.

**1ST SOURCE BANK**, Appellee–Defendant.

No. 71A04–0109–CV–388.

Court of Appeals of Indiana.

March 20, 2002.

Rehearing Denied May 15, 2002.

Donald E. Wertheimer, South Bend, IN, Attorney for Appellant.

Patrick D. Murphy, Boveri Murphy Rice Ryan & LaDue, LLP, South Bend, IN, Attorney for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, The Title Search Company, Inc. ("Title Search"), challenges the trial court's grant of summary judgment in favor of Appellee, 1st Source Bank ("the Bank"). The trial court listed three separate and independent reasons for granting summary judgment in favor of the Bank. Upon appeal, Title Search challenges each of the trial court's reasons.

We affirm.

The record reveals that on March 24, 1995, Title Search was sued in the federal District Court for the Northern District of

Indiana ("the District Court"). On November 20, 1996, the District Court jury returned a verdict against Title Search in the amount of $82,000, and the District Court entered a judgment in that amount on December 10, 1996. The District Court later added to this judgment an award of $70,416.70 in attorney fees. On May 14, 1997, the District Court sent the Bank a notice of garnishment proceedings containing an interrogatory regarding accounts held by Title Search. The Bank filed answers to the interrogatory on May 21, 1997. On May 30, 1997, the District Court held a proceedings supplemental hearing. At this hearing, a Bank representative gave testimony regarding Title Search's accounts, and the District Court gave Title Search an opportunity to establish that the accounts were exempt from garnishment. Title Search failed to establish that the accounts were exempt.

The District Court held another proceedings supplemental hearing on September 24 and 25, 1998. Title Search failed to appear at this hearing.[1] The Bank answered interrogatories instead of appearing in person. These answers indicated that Title Search maintained two accounts with the Bank. As of August 24, 1998, the first account, numbered 123–224–8 contained $7,950.00, and the other account, numbered 811232248, contained $1,429,455.60. The District Court noted that Title Search had established a certificate of deposit in the name of the original plaintiff in the sum of $72,283.47, and gave Title Search credit for that amount. The District Court then ordered the Bank to

"disburse to Plaintiff ... from account numbers 123–224–8 and 8112232248[sic] in the name of The Title Search Company, the amount of $93,165.65, the same being the remaining portion of the unpaid judgment, plus interest." Appellee's Appendix at 109. The Bank complied with the order.

On November 5, 1998, Title Search filed a "Motion for Reconsideration, Petition for Temporary Restraining Order and Preliminary Injunction, and an Expedited Hearing" challenging the garnishment order, wherein Title Search argued that account number 123–224–8 was a trust or escrow account containing money of its customers, not its own money. The District Court denied this motion.

Over one year later, on February 4, 2000, Title Search filed suit against the Bank in St. Joseph Circuit Court, again claiming that account 123–224–8 was an escrow holding account, and that the Bank, "without the authorization or consent of Plaintiff, converted and withdrew funds from said account in satisfaction of a purported garnishment order issued from the [District Court]." Appellee's App. at 2. Title Search claimed in the complaint that the Bank's actions were a breach of a fiduciary duty, breach of contract, conversion, and a violation of Indiana's Uniform Commercial Code provisions.[2]

Soon thereafter, the Bank petitioned the District Court to stay Title Search's state claim pursuant to the All–Writs Act, 28 U.S.C. § 1651.[3] On June 16, 2000, the

---

1. Although Title Search claimed that they received no notice of this hearing, the District Court has since specifically rejected this claim.

2. We note that the state-court case presently before us addresses the Bank's actions with regard only to account number 123–224–8, which at the time of the garnishment order

contained only $7,950. It does not reference account 811232248, which at the same time contained in excess of one million dollars.

3. As noted by the District Court, the All Writs Act "has been interpreted to authorize a federal court to enjoin actions in state court when the injunctive relief is necessary to prevent relitigation of an existing federal judg-

District Court entered a memorandum and order enjoining Title Search from relitigating certain issues in state court. Specifically, the District Court ordered:

"1. Title Search is prohibited from relitigating in the related state-court action those allegations and/or issues contained in Paragraphs 5,6,7,8 and 11 of its state-court complaint [referring to the account as an escrow account and claiming the Bank's withdrawal of funds therefrom to be a conversion and breach of duty]. However, notwithstanding any other provision of this Order, Title Search shall not be prohibited from litigating the issue of whether it was the named account owner of Account No. 123–224–8 with 1st Source in or about September 1998, as alleged in the first sentence of Paragraph 5 of the Title Search state-court complaint.

2. Title Search is prohibited from litigating in the related state-court action the issue of whether it was the sole owner [of] the funds contained in Account No. 123–224–8 with 1st Source Bank. Whether the funds belonged to Title Search or its customers is a question that has already been determined as part of its garnishment proceeding, that took place between April 4, 1997 and November 10, 1998. The court determined that Title Search was the sole owner of the funds, and, therefore, the issue shall not be tried again.

3. Additionally Title Search is prohibited from litigating in the related state-court claim whether the garnishment order issued by the United States District Court for the Northern District of Indiana on September 24, 1998 was valid and enforceable. The matter has been fully litigated and shall not be tried again.

* * *

4. Title Search shall not be prohibited from litigating in the related state-court action the allegations contained in Paragraph's [sic] 9,10 and 12 of the state-court complaint [referring to Title Search's claims under the U.C.C., its claim of damages, and whether the Bank owed it a duty to resist the garnishment order]." Appellee's App. at 32–33.

There is no indication that Title Search ever appealed this decision.

On September 20, 2000, the Bank filed a motion for summary judgment with the trial court. Title Search filed its reply to the Bank's motion for summary judgment on November 20, 2000. In its reply, Title Search again claimed that the account in question was an escrow account and that the Bank had breached a fiduciary duty by not taking "legal steps to prevent these funds from being improperly paid out." Appellee's App. at 147. Thereafter, on November 29, 2000, the Bank filed a verified petition asking the District Court to find Title Search in civil contempt for violating the Court's June 16, 2000 order. The District Court Magistrate wrote a report and recommendation, wherein he found that several of Title Search's arguments at the state court were in violation of the District Court's prior order and recommended that Title Search be fined $9,121.15. District Court Judge Robert L.

---

ment. *U.S. v. New York Tel. Co.*, 434 U.S. 159, 172 [98 S.Ct. 364, 54 L.Ed.2d 376] (1977)." Appellee's App. at 27.

Miller adopted and confirmed the magistrate's report on March 29, 2001. The District Court's order required Title Search to file a memorandum in the state court "withdrawing all references to language, issues and arguments advanced by Title Search in response to [the Bank's] motion for summary judgment that violate this court's order of June 16, 2000. . . ." Appellee's App. at 179. Title Search then filed a memorandum with the state court withdrawing the offending portions of their response to the Bank's motion for summary judgment.[4] Following a hearing on April 30, 2001, the trial court granted summary judgment in favor of the Bank on May 1, 2001.

 The standard used by this court upon appeal from summary judgment is well settled. Summary judgment is appropriate only if the designated evidentiary material demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Jones v. Western Reserve Group/Lightning Rod Mut. Ins. Co.*, 699 N.E.2d 711, 713 (Ind.Ct.App.1998), *trans. denied.* Upon appeal, we apply the same standard as the trial court and resolve disputed facts or inferences in favor of the non-moving party. *Jones,* 699 N.E.2d at 713. The moving party bears the burden of establishing, prima facie, that no genuine issues of material fact exist and that he or she is entitled to judgment as a matter of law. *Chance v. State Auto Ins. Cos.,* 684 N.E.2d 569, 570 (Ind.Ct.App.1997), *trans. denied.* Only then does the burden fall upon the non-moving party to set forth

specific facts demonstrating a genuine issue for trial. *Id.* Nevertheless, the party appealing a grant of summary judgment bears the burden of persuading us that the trial court erred. *Sullivan v. City of Evansville,* 728 N.E.2d 182, 187 (Ind.Ct.App. 2000).

Upon appeal, Title Search claims that the trial court erred when it determined that the Bank was immune from liability relating to the garnishment based upon Indiana Code § 34–25–3–15 (Burns Code Ed. Repl.1998), which reads:

"(a) In addition to other proceedings, this section applies to proceedings supplementary to execution involving a depository financial institution under IC 28–9.

(b) A person, whether designated as a garnishee defendant, an income payor, or otherwise, who complies with what purports to be a garnishment, an income withholding order, or a hold or restriction on withdrawal order issued under:

(1) the Indiana Rules of Trial Procedure;

(2) this article (or IC 34–1–11 before its repeal);

(3) IC 31–16–15 (or IC 31–2–10 before its repeal) or a similar law of Indiana or another state pertaining to support or maintenance of any person; or

(4) IC 34–55–8–7 (or IC 34–1–44–7 before its repeal) concerning proceedings supplementary to execution;

is not personally liable for the amounts withheld if, for any reason, the order is

---

**4.** Specifically, Title Search withdrew references that account 123–224–8 was an escrow account, that Title Search's interest in the account was contingent and un-matured, that the withdrawal of funds from this account was unauthorized, that Title Search was not notified of the garnishment hearing, that the

garnishment order was based on incorrect information, and that Title Search never had the opportunity to inform the District Court of the nature of the account. Title Search, however, asserted that the remaining materials designated by it required denial of the Bank's motion for summary judgment.

determined by a court to be procedurally defective."

■ According to the Bank, even if the garnishment order at issue here was ever determined by a court to be defective, Section 15(b) provides it immunity from Title Search's present action. Title Search counters that Section 15(b) applies only to those orders issued pursuant to *Indiana* statutes or trial rules. According to Title Search, the garnishment order in question was not issued pursuant to Indiana statutes or trial rules but by federal court rules. We disagree. Although the District Court's garnishment order was issued pursuant to Federal Rule of Civil Procedure 69(a), the relevant portion of this rule states:

> "The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution *shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought,* except that any statute of the United States governs to the extent that it is applicable." (emphasis supplied).

Thus, the District Court was required to follow the practice and procedure of Indiana in its garnishment proceedings. Indeed, the garnishment notice sent by the District Court to the Bank specifically referenced Indiana Code Title 28, Article 9, also known as the Adverse Claims Act.

■ Title Search argues that, under Indiana law, a state court may not enforce proceedings supplemental to a federal court's judgment unless the federal court's judgment is domesticated. *See Borgman v. Aikens,* 681 N.E.2d 213 (Ind.Ct.App. 1997), *trans. denied.* Title Search claims that, because the District Court's judgment was not domesticated, I.C. § 34–25–3–15 cannot protect the Bank from liability. The case before us is, however, clearly distinguishable from *Borgman.* In *Borgman,* the plaintiffs brought proceedings supplemental in an Indiana court based upon a judgment rendered by a federal court. In contrast, here the proceedings supplemental were brought in the District Court pursuant to Indiana law to enforce the judgment of that court. There was no need to domesticate the federal court's judgment, as no one sought to enforce the federal court judgment in state court.

The proceedings supplemental in the District Court were in accordance with Indiana's Adverse Claims Act, and I.C. § 34–25–3–15 provides that garnishee defendants such as the Bank shall not be liable for amounts withheld in compliance with garnishment orders issued pursuant to the Adverse Claims Act if the garnishment order is later determined by a court to be procedurally defective. Here, the validity of the garnishment order was repeatedly established by the District Court, and there is no indication that Title Search ever appealed this determination. It is therefore *res judicata* and cannot be relitigated in state court.[5] *See generally Eichenberger v. Eichenberger,* 743 N.E.2d 370 (Ind.Ct.App.2001). Thus, under I.C. § 34–25–3–15, the Bank may not be held liable for the amounts it withheld in compliance with the garnishment order.

■ Nevertheless, Title Search insists that the Bank breached a contractual and statutory duty when it failed to take "any lawful and legal steps to have the [garnishment] order delayed, reconsidered, or set aside." Appellant's Brief at 9. According to Title Search, the issue of whether the Bank breached this duty does not depend upon the underlying validity of the garnishment order. The implication of this

**5.** In fact, Title Search explicitly states in its brief that it is not challenging the validity of the garnishment order upon appeal. Appellant's Brief at 7.

argument is that the Bank could have breached a contractual duty by obeying the garnishment order. This cannot be. The Bank could not have breached any duty it owed to Title Search by doing what it was obligated to do under law—comply with a valid garnishment order. *See Jackson v. Farmers State Bank*, 481 N.E.2d 395, 402 (Ind.Ct.App.1985) (party cannot argue that an erroneous court order may be disobeyed), *trans. denied; Crowl v. Berryhill*, 678 N.E.2d 828, 830 (Ind.Ct. App.1997) (even if court order is erroneous, it must still be obeyed until reversed upon appeal). To the extent that Title Search claims to have contracted otherwise, such a contract would be contrary to established public policy.[6] *See Trotter v. Nelson*, 684 N.E.2d 1150, 1152 (Ind.1997). Title Search is simply attempting to collaterally attack the propriety of the District Court's garnishment proceedings by claiming that the Bank could have somehow convinced the District Court that the account at issue was not subject to garnishment after Title Search itself failed to do so.[7] The trial court properly granted summary judgment in favor of the Bank.

The judgment is affirmed.

KIRSCH, J., and ROBB, J., concur.

---

6. Both the Adverse Claims Act and I.C. § 34–25–3–15 suggest a strong public policy preference favoring compliance with garnishment orders.

7. We also note that Title Search has not established that it was in any way damaged by the Bank's actions. Title Search acknowledges upon appeal that it has been determined to be the sole owner of the funds in account 123–224–8 and that the account was subject to garnishment. Still, Title Search claims that because of the Bank's actions it was required to borrow funds at a high rate of interest to replace those withdrawn pursuant

to the garnishment order, and that their business reputation and business relationships were harmed. Nevertheless, the Bank's compliance with what Title Search acknowledges was a valid garnishment order to remove what Title Search admits was its own money cannot be the cause of the harm complained of by Title Search. As the garnishment order was valid, the same result would necessarily have resulted regardless of the Bank's action or inaction—the funds in the account would have been withdrawn pursuant to the garnishment order.